JUSTICE COATS
delivered the Opinion of the Court. _
11 Warne petitioned for review of the court of appeals' judgment reversing the dismissal of Hall's complaint, which asserted, as relevant here, a claim of intentional interference with contract See Hall v. Warne, No. 12CA719 (Colo. App. Jan. 23, 2014) (not published pursuant to CAR. 35(F)). Although invited to apply the standard for dismissal articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the district court dismissed for failure to state a claim upon which relief could be granted without addressing either Twombly or Iqbal in its written order. By contrast, the court of appeals expressly declined to apply the more recent United States Supreme Court jurisprudence governing Fed. R. Civ, P. 12(b)(6), finding itself instead bound by this court's existing precedent, which has heavily relied on the Supreme Court's earlier opinion in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and particularly its language to the effect that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove "no set of facts" in support of his claim. Declining, therefore, to be influenced by the United States Supreme Court's more recent admonition to the federal courts that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face," Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 *590 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955), the court of appeals found the complaint sufficient to state a claim.
T2 Because our case law interpreting the Colorado Rules of Civil Procedure in general, and CRCP. 8 and 12b)(5) in particular, reflects first and foremost a preference to maintain uniformity in the interpretation of the federal and state rules of civil procedure and a willingness to be guided by the Supreme Court's interpretation of corresponding federal rules whenever possible, rather than an intent to adhere to a particular federal interpretation prevalent at some fixed point in the past, the court of appeals too narrowly understood our existing precedent. Because the plaintiff's complaint, when evaluated in light of the more recent and nuanced analysis of Twombly and Iqbal, fails to state a plausible claim for relief, the judgment of the court of appeals finding the complaint to be sufficient is reversed, and the matter is remanded with instruction to permit further proceedings consistent with this opinion.
I.
13 Bill Hall filed a complaint in state district court against the Town of Gilerest and its mayor, Menda Warne, as an individual. Hall's complaint alleged that Warne used her authority as mayor to interfere with his purchase agreement to sell a parcel of land in Gilcrest to Ensign United States Drilling, Inc., which intended, according to an attachment to the complaint, to build its headquarters on the property. Although the precise terms of the agreement were not included in the pleadings, the complaint, along with its attached exhibits, indicated that Ensign tried for more than a year to obtain approval to purchase the property and construct its headquarters in Gilerest, but its efforts were thwarted by the town government. More specifically, the complaint alleged that Warne caused Ensign to terminate the agreement by imposing unauthorized and unreasonable conditions on its proposed site development plan, by mayoral order, after the plan had been conditionally approved by the town board at a public hearing, The complaint further alleged that Warne's actions were motivated by malice towards Hall and that the conditions imposed on Ensign's plans were "disproportionate to any impact Ensign would have on the town" and "were not based on the reasonable requirements of applicable ordinances or law." On the basis of these and similar allegations, the complaint asserted several claims for relief under state and federal law, including intentional interference with contractual obligations, taking without just compensation, and violation of substantive due process under 42 U.S.C. § 1988 (2012).
14 Because the original complaint included both state and federal claims, the case was removed to federal district court pursuant to 28 U.S.C., § 1441 (2012). Upon removal, Warne and the town filed a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). Before briefing was complete, the federal district court accepted a stipulation by the parties whereby the federal law claims would be voluntarily dismissed by Hall and the case would be remanded to state district court for resolution of the state law claim for intentional interference with contractual obligations against Warne.[1]
5 On remand to the state district court, the motion to dismiss under Fed. R. Civ. P. 12(b)(6) was converted into a motion to dismiss under the corresponding, though differently-numbered state rule, C.R.C.P. 12(b)(5). In subsequent briefing, Warne and the town urged the district court to review the motion to dismiss according to the "plausible on its face" standard recently articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), rather than the so-called "no set of facts" standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), cited favorably by this court in the past. Without expressly distinguishing the Conley from the Twombly/Iqbal standard of review, the district court granted the defendants' motion to dismiss, finding that the *591 complaint contained insufficient allegations that Warne in fact caused the conditions to be imposed on Ensign's proposed development plan that ultimately led Ensign to terminate its contract with Hall.
46 The plaintiff was granted leave to file: an amended complaint, which he did, to include additional allegations that he had been informed that Warne exercised control over land development matters and would have used any means at her disposal to ensure that Ensign would never meet the requirements necessary to build, regardless of what had been approved by the town board. The defendants renewed their motion to dismiss for failure to state a claim, which the district court again granted, finding that while the amended complaint provided additional allegations supporting a conclusion that Warne possessed the authority and intent to block Ensign's development plan, it lacked allegations of Warne's specific conduct causing Ensign's breach. Subsequently, the district court also awarded attorney fees in favor of the defendants.
T7 On Hall's appeal of the dismissal of his claim for contractual interference, the court of appeals reversed, finding itself bound by this court's precedent relying on Conley's "no set of facts" standard and, therefore, rejecting Warne's proposal to examine the complaint under the Twombly/Iqbal "plausible on its face" standard. Under the Conley standard, the court of appeals concluded that the complaint sufficed to state a claim for relief and, more specifically, that Hall's allegations to the effect that Warne possessed the authority and intent to block Emsign's development plan and that she had exercised that authority to impose conditions despite the town board's prior approval of Ensign's plan sufficiently pled that Warne caused Ensign to terminate its contract with Hall. The court of appeals therefore also reversed the district court's award of attorney fees.
8 Warne petitioned this court for further review by writ of certiorari.
18
T9 In Bell Atlantic Corp. v. Twombly, in addressing the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct, the United States Supreme Court explicated the pleading standard of Federal Rule of Civil Procedure 8 in greater detail than it had done in at least a half-century, giving particular emphasis to the "plaintiff's obligation to provide the 'grounds' of his 'entitlefment] to relief?" 550 U.S. 544, 555, 127 S.Ct., 1955, 167 L.Ed.2d 929 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In that context, the Court stated that the factual allegations of the complaint must be enough to raise a right to relief "above the speculative level," id., and provide "plausible grounds to infer an agreement," id. at 556, 127 S.Ct. 1955. Had there been any doubt, two years later, in Ashcroft v. Iqbal, the Court made clear that Twombly's "plausibility standard" was in no way limited to the antitrust conspiracy context in which it had been articulated, but rather represented a "construction of Rule 8," Iqbal, 556 U.S. 662, 678-80, 129 S.Ct. 1987 (2009), which governs the pleading standard "in all civil actions and proceedings in the United States district courts," id. at 684, 129 S.Ct. 1987. Quoting liberally from its earlier opinion in Twombly, the Court in Iqbal characterized that standard as being underlain by two working principles: First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," id. at 678, 129 S.Ct. 1937, and second, "only a complaint that states a plausible claim for relief survives a motion to dismiss," id. at 679, 129 S.Ct. 1987.
110 The Court derived its "plausibility standard" from Rule 8 as it then existed, without feeling compelled to either amend the language of the rule or overturn any of the Court's prior interpretations, Twombly, 550 U.S. at 569 n. 14, 127 S.Ct. 1955, instead characterizing the Twombly plaintiffs' main argument against this interpretation as its "ostensible conflict" with an isolated statement in the Court's earlier construction in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Twombly, 550 U.S. at 560-61, 127 S.Ct. 1955. As the Court explained, when it spoke (some fifty years earlier in Conley) not only of the need for fair notice of the grounds for entitlement to relief, but also of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support *592 of his claim which would entitle him to relief," id, at 561, 127 S.Ct. 1955 (quoting Conley, 355 U.S. at 45-46, 78 S.Ct. 99), the "accepted rule" to which it referred was a rule that "onee a claim has been stated adequately, it may be supported by showing any set of facts consistent with the- allegations in the complaint," id. at 563, 127 S.Ct. 1955. While the Court openly conceded that the "nq set of facts" passage of Conley could be read in isolation as saying that any statement revealing the theory of the claim would suffice unless its factual impossibility could be shown from the face of the pleadings, and that. many courts had understood it precisely that way, id, at 561, 127 S.Ct. 1955, in context, Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival," id. at 563, 127 S.Ct. 1955.
11 Like many federal courts and other state courts, this court took Conley's "no set of facts" language, at least ostensibly, at face value, As the court of appeals rightly noted, this court has a long, and continuous, tradition of repeating, in reliance on Conley, that motions for dismissal are looked upon with disfavor and will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief, See, e.g.,, Qwest Corp. v. Colo. Div. of Prop. Taxation, 2013 CO 39, ¶ 12, 304 P.3d 217, 221; Sprott v. Roberts, 154 Colo. 252, 390 P.2d 465, 467 (Colo.1964) (quoting Conley's "no' set of facts" passage for the first time in a concurring opinion, while noting that "[this expresses the recognized way to test the suffi-clency of a claim, and it has been applied in a legion of cases in the lower federal courts"). In fact, our reliance on the federal courts for our interpretation of the pleading standards of our own Rule 8 can be traced back even before Conley, virtually to the initial replacement of our former Code of Civil Procedure by the modern Rules of Civil Procedure. See People ex rel. Bauer v. McCloskey, 112 Colo. 488, 150 P.2d 861, 863 (Colo.1944) (citing Eberle v. Sinclair Prairie Oil Co., 35 F.Supp. 296, 297 (E.D.Okla.1940), aff'd, 120 F.2d 746 (10th Cir.1941); Sparks v. England, 113 F.2d 579, 582 (8th Cir.1940); Leimer v. State Mut. Life Assurance Co. of Worcester, Mass., 108 F.2d 302, 306 (8th Cir.1940) (subsequently relied on by Conley, 355 U.S. at 45-46 n. 5, 73 S.Ct. 99, for its characterization of the "accepted rule")).
{12 The question before us today is therefore less one of whether we will abandon the Conley pleading standard in favor of the Twombly/Igbal standard than whether our pleading standard has always represented an attempt to mirror the accepted federal construction of the virtually identical federal pleading rules, rather than to adopt the particular interpretation of the corresponding federal rule that was prevalent at the time, For a number of reasons, in the absence of some compelling justification unique to the history or practice of this jurisdiction, we have always considered it preferable to interpret our own rules of civil procedure harmo-niougly with our understanding of similarly worded federal rules of practice. See Leaffer v. Zarlengo, 44 P.3d 1072, 1080 (Colo.2002) (federal cases interpreting federal rules provide "highly persuasive guidance" when interpreting identical state rules); Faris v. Rothenberg, 648 P.2d 1089, 1091 n. 1 (Colo.1982), We see no reason to abandon that philosophy or approach today.
118 As a general matter, except as required by the Supremacy Clause of the Federal Constitution, we are clearly not bound to accept the United States Supreme Court's understanding of language susceptible of more than one reasonable interpretation, and for various reasons we have, on occasion, deviated in our construction of similarly worded constitutional provisions, statutes, and rules. However, quite, apart from the fact that a considered interpretation by the Supreme Court, applying rules of construction equally acceptable in this jurisdiction, will virtually always be worthy of serious consideration, as we have previously observed, simply disagreeing with the Supreme Court about the meaning of the same or similar provisions appearing in both federal and state law risks undermining confidence in the judicial process and the objective interpretation of codified law. See Curious Theatre Co. v. Colo. Dep't of Pub. Health & Env't, 220 P.3d 544, 551 (Colo.2009). This concern is only heightened *593 when the disagreement in question reflects our resistance to the Supreme Court's determination that our understanding of one of its prior pronouncements has in fact been mistaken. Cf. Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116, 123-25 (Colo.2007) (overturning prior decision relying on federal caselaw subsequently repudiated by the United States Supreme Court).
14 In light of our unequivocal statements of attribution in the past, we think it disingenuous to suggest that our understanding of the pleading requirements of our own rules was not directly borrowed from the prevailing interpretation of the corresponding federal rules, by both the lower federal courts and ultimately the Supreme Court itself. Of course, were we to conclude that our reliance on this federal interpretation had become so much a part of the fabric of state practice that the benefit of retaining it unaltered would outweigh the benefits of harmonizing the construction of identical federal and state rules of civil procedure, we could avoid the tension created by disparate interpretations of identical rules by simply amending our rule to expressly codify a "no set of facts" standard. We do not, however, find that to be the case.
[15 The desirability and importance of procedural uniformity in our unique, federal form of government has been a critical factor not only in the development of federal rules capable .of serving as a model for the states, but also for our own decision to adopt a version of the federal rules and, construe them accordingly. It cannot seriously be disputed that the Colorado Rules of Civil Procedure were modeled almost entirely after the corresponding federal rules, with the principal goal of establishing uniformity between state and federal judicial proceedings in this jurisdiction. See C.RC.P. app. D at 427, Colo. Stat. Ann. vol. 1 (Supp. 1941) ("With the hope that procedure might be adopted in Colorado following as far as practicable the new federal rules, so that a Colorado lawyer would be equally at home in the courts of the United States and those of Colorado, the Colorado Bar Association in September, 1988, authorized the appointment of a Committee to effectuate that reform."); see also Thomas Keely, How Colorado Conformed State to Federal Civil Procedure, 16 F.R.D. 291 (1954) (authored by the Chairman of the Colorado Supreme Court Rules Committee).
(16 Far from a novel concept, the prevailing policy in this country has been to favor procedural uniformity between state and federal court practice virtually since the founding of our Union, Beginning with its adoption of the so-called "Conformity Act" in 1789, Congress required lower federal courts to largely apply the procedural law of the state in which they were located, Act of Sept. 29, 1789, ch. 21, § 2, 1 Stat. 98, 98; see also 4 Charles Alan Wright & Arthur -R. Miller, Federal Practice: & Procedure § 1002 (8d ed. 2002) (titled, "History of Federal Procedure Under Statute"). While the Conformity Act's localized approach to federal procedure ultimately proved problematic, it was replaced by the Federal Rules of Civil Procedure, which were intended to facilitate state-federal uniformity by serving as a singular, authoritative model for states to follow. See Report of the Committee on Judicial Administration and Remedial Procedure, reprinted in Report of the Thirty-Fifth Annual Meeting of the American Bar Association at 484-85 (1912) (resolving to adopt rules of civil procedure for use in federal courts and "as a model"); see also Edson R. Sunderland, The Grant of Rule-Making Power to the Supreme Court of the United States, 82 Mich. L, Rev. 1116, 1122 (1984) (authored by one of the eventual drafters of the Federal Rules) ("[The primary purpose [of the Federal Rules project] ... was the attainment of local- uniformity in trial court practice between the state and federal courts.").
T17 Beyond the convenience and practical benefits of permitting practicing attorneys to move effortlessly from one forum to another, both this court and the Supreme Court have long emphasized the undesirability of having vastly different outcomes result from nothing more than a choice of forums. See, e.g., Erie R. Co. v. Tompkins, 304 U.S. 64, 77-78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); AE, Inc. v. Goodyear Tire & Rubber Co., 168 P.3d 507, 511 (Colo.2007) ("Colorado's policy is to discourage ... forum shopping."). While state courts are generally free to adopt procedural rules different from those governing federal proceedings, but see Brown v. W. Ry. *594 of Ala., 338 U.S. 294, 298, 70 S.Ct. 105, 94 L.Ed. 100 (1949) (state court not permitted to dismiss federal law claim under strict local rule of pleading), the more outcome-determinative any specific disparity between state and federal rules may be, the more undesirable that disparity becomes. In this respect, there can be little question that the difference between a rule of pleading that effectively permits reliance on the compulsory process available in civil actions to discover whether grounds for the action exist in the first place and another that effectively bars such reliance without being able to first allege plausible grounds for relief can be extremely outcome-determinative. One important benefit of uniformity in federal and state procedures has been and continues to be the reduction of forum shopping.
18 In addition to the clear importance we have identified in maintaining a substantial degree of procedural uniformity between state and federal practice, we also do not view the plausibility standard described by the Supreme Court as effecting a meaningful departure from the direction our interpretations and amendments have taken in light of the existing realities of modern practice. Just as the Supreme Court observed that a good many judges and commentators have balked at taking the literal terms of the Conley passage as a pleading standard, Twombly, 550 U.S. at 562-68, 127 S.Ct. 1955 (citing numerous examples of Conley's "no set of facts" language being "questioned, criticized, and explained away" by judges and scholars, alike), we have at times found it problematic to accept factual allegations that appear too conclusory, and on at least one occasion have, without openly criticizing the "no set of facts" standard, simply found a complaint insufficient to state a claim, for the reason that it merely asserted a theory without alleging facts which, if proved, would satisfy the elements of the claim, see Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo.2011) (favorably citing Western Innovations, Inc. v. Sonitrol Corp., 187 P.3d 1155, 1158 (Colo. App. 2008) (itself relying on Twombly, 550 U.S. at 555-56, 127 S.Ct. 1955)); see also Pub. Serv. Co. of Colo. v. Van Wyk, 27 P.3d 377, 385 (Colo.2001) (predating Twombly) (Mullarky, C.J., joined by Rice and Coats, JJ., concurring in part and dissenting in part) ("[The Van Wyks' conclusory allegations of unreasonableness fail to support a nuisance claim and thus, the motion to dismiss was properly granted.").
19 Similarly, just as the Supreme Court in Twombly referenced the costs of modern litigation and the inadequacy of discovery and case management alone to weed out groundless complaints as support for its decision to finally correct the widespread misinterpretation of Conley, see Twombly, 550 U.S. at 558-59, 127 S.Ct. 1955; see also Iqbal, 556 U.S. at 678-79, 129 S.Ct. 1987 ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."), we have similarly identified a growing need, and effort in our rules, to expedite the litigation process and avoid unnecessary expense, especially with respect to discovery, see DCP Midstream, LP v. Anadarko Petroleum Corp., 2013 CO 36, ¶ 27, 303 P.3d 1187, 1194; see also Richard P. Holme, New Pretrial Rules for Civil Cases-Part II: What Is Changed, 44 Colo. Law. 111 (July 2015) (discussing 2015 amendments to the Colorado Rules of Civil Procedure, which were "designed to significantly reduce the cost of and delays in litigation and to create a new culture for the handling of lawsuits"); id. at 111 (explaining that one of the primary influences of the 2015 amendments were proposed amendments to the federal rules which were later adopted). In light of our recent ruling in Antero Resources Corp. v. Strudley, 2015 CO 26, ¶¶ 19-26, 347 P.3d 149, 155-57, to the effect that the federal rules, in one particular regard, authorize a trial court to eliminate frivolous claims and defenses beyond what is currently authorized by our rules, the effectiveness of the "plausibility standard" in weeding out groundless complaints at the pleading stage may take on an even greater practical significance in this jurisdiction than in the federal courts.
120 Finally, in addition to his other arguments for not accepting the plausibility standard of Twombly and Iqbal as the correct interpretation of our own Rule 8, Hall asserts that, in fact, the state and federal rules are not similar at all and that material differences in the provisions of the two rules make a parallel interpretation of our rule untenable. Hall refers to language in subsection *595 (e)(1) of the rule, which finds no analog in the federal rule. Compare C.R.C.P. 8(e)(1), with Fed. R. Civ, P. 8(d)(1). That subsection indicates, in relevant part, that when a pleader is ° without direct knowledge, allegations may be made upon information and belief, and that pleadings otherwise meeting the requirements of the rules shall not be considered objectionable "for failure to state ultimate facts as distinguished from conclusions of law." C.R.GC.P. 8(e)(1).
121 Even without express authorization in the language of Federal Rule 8, federal courts had long understood it to permit pleading based on information and belief, and they continue to do so following Twombly and Iqbal. See generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 & nn.11-1.75 (8d ed. 2002 & 2015 Supp.) (titled, "Statement of the Claim-Pleading on Information and Belief") (gathering cases and characterizing allegations on information and belief as a "practical necessity"). Far from its conflicting with the plausibility standard, federal courts have observed that pleading based on information and belief may, in fact, be useful where the facts giving rise to a plausible claim are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible. See, e.g., Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir.2010); see also 5 Wright & Miller, supra, § 1224 & n.7 ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has suffi-client data to justify interposing an allegation on the subject.").
122 With regard to C.R.C.P. 8(e)(1)'s reference to "ultimate facts" and "conclusions of law," although this reference might on first glance appear to bear on the requirement of Twombly/Iqbal to allege plausible grounds for relief, in reality the term "ultimate facts" appears as a term of art, with reference to distinctions between "evidentiary facts," "ultimate facts," and "conclusions of law," having significance for pleading under the former code pleading system in this jurisdiction, but not for pleading under the scheme of the rules. See McCloskey, 150 P.2d at 862 (addressing C.R.C.P. 8(e)(1) and explaining that it served to distinguish our rules from code pleading rules); see also John Denison, Code Pleading in Colorado §§ 812-18 (1986) (authored by former Chief Justice of Colorado) ("It is said that ultimate fact is a conclusion by reasoning on evidentiary facts, and that evidentiary fact is acquired by the senses, i.e., sight, hearing, taste, etc.").
123 As the original committee comment explained, C.R.C.P. 8(e)(1)'s unique language-with regard to both pleading based on "information and belief" and pleading "ultimate facts"-was not added 'to distinguish our rule from the corresponding rule, but rather to "clarify the [rule's] meaning and bring it in line with the majority of the Federal decisions." C.R.C.P. 8(e)(1) note, Colo. Stat. Ann. vol. 1 (Supp. 1941).
124 Because we understand our prior cases as reflecting the merit of interpreting our rules of civil pleading harmoniously with the corresponding federal rules, wherever that can be accomplished without violating our. own interpretative rules or interfering with important state policy, and because we find the interpretative gloss added by the Supreme Court in Twombly and Iqbal to be very much in line with the direction our rule-making has taken and the current needs of the civil justice system in this jurisdiction, we join those other states already embracing the plausibility standard articulated in those cases as a statement of the pleading requirements of their own analogs to Federal Rule 8.
III.
125 A plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he alleges and proves that the defendant intentionally and improperly induced a party to breach the contract or improperly made it impossible for a party to perform.[2] Krystkowiak v. W.O. Brisben *596 Cos., 90 P.3d 859, 871 (Colo.2004), Because it is so clearly dependent upon context and civreumstances, we have never attempted -to rigidly define "improper" for all purposes of interference with contract, but we have favorably referenced the Restatement (Second) of Torts § 767 (Am. Law Inst, 1965), in this regard and its enumeration of potentially relevant factors, which includes the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes, the interests sought to be advanced by the actor, the social interests in protecting the freedom of action of the actor and the contractual interests of the other, the proximity or remoteness of the actor's conduct to the interference, and the relation between the parties, See Trimble v. City & Cty. of Denver, 697 P. 20 716, 726 (Colo.1985). Evaluated in terms of the plausibility standard and its disregard of legal conclusions, whatever else the amended complaint may or may not haye adequately alleged, it failed to sufficiently allege 'that Warne acted improperly in inducing a breach or making performance of the contract between Hall and Ensign impossible.
126 While the complaint did not allege the specific: terms of the purchase agreement between Hall and Ensign, the entirety of its allegations made clear that the Agreement contemplated the town's approval of a site development plan before the property could be used for the purpose for which Ensign desired its purchase, The thrust of Hall's complaint, therefore, was that Warne induced a breach of the purchase agreement or effectively made the purchase impossible by improperly imposing conditions on the plan that were not agreeable to Ensign. The allegations of the complaint bearing on the question of the wrongfulness or impropriety of Warne's conduct were of two broad, and at times overlapping, kinds: allegations that Warne's actions were motivated by malice toward Hall and allegations that the conditions and the manner .of their imposition were unauthorized, unlawful or unreasonable.
127. Much as was the case in both omle and Iqbal, the allegations of Hall's complaint were insufficient to state a claim because a number of them were. conclusory and therefore not at all entitled to an assumption that they were true, and because the remainder insufficiently alleged plausible grounds for relief, largely because they were equally consistent with non-tortious conduct. See Iqbal, 556 U.S. at 680-84, 129 S.Ct. 1937; Twombly, 550 U.S. at 564-70, 127 S.Ct. 1955. The broad allegations that Warne's actions were motivated by malice or animosity toward Hall were unchallengeably conclusory allegations of a kind elsewhere held to be incapable of supporting a plausible claim for relief, See, eg., Emmons v. City Univ. of N.Y., 715 F.Supp.2d 394, 425 (E.D.N.Y.2010) (allegation that defendant acted out of "bad faith, self-interest, malice, and personal animosity" deemed conclusory and insufficient to support a claim for tortious interference with contract); cf. Iqbal, 556 U.S. at 686, 129 S.Ct. 1937 (bald allegation of discriminatory intent held insufficient to support unlawful discrimination claim), Similarly, the allegations that the conditions allegedly imposed by mayoral order were unlawful, arbitrary, or unreasonable, without reference to any particular law prohibiting them or any factual allegation specifying how or why they should be considered unreasonable, were bare, conclusory assertions, Even alleging that the conditions were dlsproportmnate to any impact Ensign would have on the town, without alleging the reasons why and manner in which the conditions were disproportionate, could only be considered formulaic or conclusory and therefore not entitled to be assumed true. In any event, without factual allegations establishing that the imposition of disproportionate conditions exceeded Warne's authority or was otherwise prohibited, the complaint's conclusory allegation of disproportionality fails to plausibly suggest improper conduct, even if we were to assume its truth. Cf. Twombly, 550 U.S. at 566, 127 S.Ct. 1955 (allegation of parallel conduct held insuffi-clent to support antitrust claim requiring proof of an agreement), |
128 To the extent the complamt included allegations of specific examples of conduct that could be taken as previous exhibitions of "animogity" toward Hall, like Warne's asking how and for how much he acquired the property in question and opposing Emsign's plan despite its having had the support of the town board, these allegations were, as was *597 similarly the case in both Twombly and Iqbal, equally consistent with non-tortious explanations for her conduct, namely attempting to fulfill her duty to the town by acting in its best interests. See id. at 567-68, 127 S.Ct. 1955 (while alleged parallel conduct by antitrust defendants was consistent with an illegal agreement, it was equally consistent with each defendant acting independently according to its own economic interest); Iqbal, 556 U.S. at 680-81, 129 S.Ct. 1987 (discrimination complaint against government officials held insufficient where there was an "obvious alternative explanation" for the challenged conduct). As the Supreme Court itself has emphasized, serutinizing a complaint for allegations that are not as consistent with proper conduct may be particularly important with regard to the actions of government officials, who "must be neither deterred nor detracted from the vigorous performance of their duties." See Iqbal, 556 U.8. at 685-86, 129 S.Ct. 1987, Even assuming, as Hall was allegedly advised, that Warne stated she was not going to allow Ensign to do business in Gilerest, and taking as true the belief of a town official that Warne would have used any means at the disposal of the town to ensure that Ensign would never meet the requirements to build, those alleged statements do not plausibly suggest malice towards Hall any more than, or perhaps even as much as, merely an objection to doing business with Ensign, whether justified on legitimate grounds or not. Land use decisions can clearly involve a complex array of policy considerations as well as heated personal interactions, and therefore in the absence of factual allegations plausibly suggesting Warne was acting out of unrelated personal animus towards Hall or to the detriment, rather than the benefit, of the town for personal reasons, even angrily opposing Ensign's development plan does not plausibly allege impropriety.
IV,.
129 In his answer brief, the plaintiff requests that he be permitted to amend his complaint in the event his complaint is deemed insufficient according to the plausibility standard. Rule 15(a) of our Rules of Civil Procedure provides that leave to file amended pleadings "shall be freely given when justice so requires." Although our opinion today does not result in an amendment to the language of our rules of procedure, it clearly signals a shift in the considerations according to which a motion to dismiss is to be evaluated and, therefore, a change in the terms in which a complaint may have to be expressed to avoid dismissal, Because the plaintiff has not until today had notice of the terms in which his claim must be pled, justice requires that he be given an opportunity to amend the allegations of this claim for relief before any ruling on a motion to dismiss for failure to state a claim. Only if the plaintiff fails to overcome a motion to dismiss his newly amended complaint will an order of attorney fees become appropriate,
v.
130 Because the plaintiff's complaint, when evaluated in light of the more recent and nuanced analysis of Twombly and Iqbal, fails to state a plausible claim for relief, the judgment of the court of appeals finding the complaint to be sufficient is reversed, and the matter is remanded with instruction to permit further proceedings consistent with this opinion.
JUSTICE GABRIEL dissents, and JUSTICE MARQUEZ and JUSTICE HOOD join in the dissent.

. Two unrelated claims against the town were also included in the remand order and later dismissed by the state district court. The plaintiff did not appeal the dismissal of these claims, and thus neither is at issue before us.

. Because Warne withdrew her argument that Hall failed to allege with adequate specificity the willful and wanton conduct required to overcome a defense of governmental immunity, see § 24-10-110(5)(a), (b), C.R.S. (2015), any separate statutory pleading requirements concerning willful and wanton conduct are not before us.