The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 29, 2022

## 2022COA148

**No. 21CA1972, *Adams Cnty. Housing v. Panzlau* — Judges — Code of Judicial Conduct — Disqualification — Judge's Former Law Firm; Civil Procedure — Change of Judge — Stay of Proceedings — Successive Motions**

A division of the court of appeals decides three issues of first impression: (a) a judge is not required to recuse from a case involving a previous client of the judge's former law firm, where the judge was not involved with the client's matters while at the firm and the case pending before the judge is unrelated to the matters in which the law firm represented the client; (b) a judge is not required to stay the proceedings under C.R.C.P. 97 when a party files a successive recusal motion that rests on the same factual allegations as the party's prior unsuccessful motion to recuse; and (c) under *Warne v. Hall*, 2016 CO 50, 373 P.3d 588, a proponent of a claim

must plead facts that, if true, would satisfy each element of the claim.

Accordingly, the division affirms the district court's denial of the appellant's recusal motions, its decision not to stay the proceedings during the pendency of the third recusal motion, and its dismissal of the appellant's counterclaims.

Court of Appeals No. 21CA1972
Adams County District Court No. 21CV30317
Honorable Kyle Seedorf, Judge

Adams County Housing Authority, d/b/a Maiker Housing Partners,

Plaintiff-Appellee,

v.

Rebekah Panzlau,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE LIPINSKY
Fox and Freyre, JJ., concur

Announced December 29, 2022

Fairfield and Woods, P.C., Colin A. Walker, Lee Katherine Goldstein, Denver, Colorado, for Plaintiff-Appellee

Rebekah Panzlau, Pro Se

¶ 1     Defendant, Rebekah Panzlau, appeals the district court's judgment dismissing the negligence, breach of contract, and constructive eviction counterclaims she asserted against plaintiff, Adams County Housing Authority, d/b/a Maiker Housing Partners. We affirm.

## I.     Background

¶ 2     Maiker is a public body created pursuant to the Colorado statutes governing county housing authorities, sections 29-4-501 to -509, C.R.S. 2022.  It is charged with providing affordable housing and services to low-income residents of Adams County.

¶ 3     Panzlau rented an apartment from Maiker.  After Panzlau notified Maiker of a water leak in her apartment, Maiker paid for Panzlau to stay at a hotel while it repaired the leak.  A few days later, Panzlau also complained to Maiker about water damage and mold in the apartment.  Maiker engaged a contractor that submitted a report detailing an elevated level of mold spores in Panzlau's apartment.

¶ 4     Pursuant to the terms of Panzlau's lease, Maiker asked Panzlau to vacate the apartment so that it could perform repairs

and remediate the mold.  Although Panzlau continued to stay in the hotel, she refused to remove her belongings from the apartment.

¶ 5    Maiker filed a forcible entry and detainer (FED) action against Panzlau to obtain legal authorization to remove her belongings from her apartment so it could make repairs and perform the necessary remediation there.  Acting pro se, Panzlau filed what we construe as an answer and counterclaims (first counterclaims).  In the first counterclaims, Panzlau alleged, among other facts, that the mold contamination in her apartment had injured and sickened her.  In addition, over the course of the litigation, Panzlau filed three motions, premised on the same factual allegations, for recusal of the trial judge.  After the court entered an order for possession in favor of Maiker, Panzlau amended her counterclaims.  We describe the case's procedural history in further detail below.

¶ 6    Panzlau appeals the court's final judgment dated October 22, 2021, dismissing all of her counterclaims that remained pending at the time.

## II.    Analysis

¶ 7    Panzlau raises ten issues on appeal.  We consolidate them as follows: (1) issues pertaining to the district judge's denial of

Panzlau's recusal motions; (2) issues pertaining to the dismissal of Panzlau's counterclaims; and (3) miscellaneous issues.

### A. Self-Represented Litigants

¶ 8 Because Panzlau has represented herself throughout these proceedings, we must interpret her pleadings and motions liberally. *See Minshall v. Johnston*, 2018 COA 44, ¶ 21, 417 P.3d 957, 961. However, self-represented parties such as Panzlau must follow the same procedural rules as parties represented by counsel, and their lack of an attorney does not excuse their noncompliance with the procedural rules and other applicable law. *See In re Marriage of Wright*, 2020 COA 11, ¶ 33, 459 P.3d 757, 764.

### B. The Court's Denial of Panzlau's Recusal Motions

#### 1. Additional Facts Pertaining to the Recusal Motions

¶ 9 At the hearing on Maiker's request for an order of possession, Panzlau orally moved for recusal of the district judge (first recusal motion) on the grounds that the judge's former law firm (the firm) had represented Adams County Housing Authority in a prior, unrelated case. The judge orally denied the motion, explaining that, while at the firm, he had not been involved with any case in which the Authority was a party.

¶ 10    Two days later, Panzlau filed a written motion to recuse the judge (second recusal motion), again based on the judge's prior relationship with the firm.  Specifically, Panzlau asserted that the judge was required to recuse "due to [an] actual or perceived conflict of interest according to Colo. R. Civ. P. 97."

¶ 11    The judge denied the second recusal motion in a written order on April 5, 2021.  In that order, the judge noted that he had addressed the merits of the second recusal motion when he denied Panzlau's first recusal motion.  He explained that he

> was unaware of [the firm's] representation, had
> not served as [the Authority's] counsel himself,
> and determined that, even if a prior employer
> had represented [the Authority], [the judge]
> has no interest or prejudice or any relationship
> or connection with [the Authority] such as to
> render it improper for him to sit on the matter.

¶ 12    The judge further noted that the second recusal motion failed even if he viewed it as a motion for reconsideration of his ruling on the first recusal motion.  The court explained that Panzlau had not set forth any "legal authority supporting a request for reconsideration or other relief" and, moreover, had not "include[d] a certificate of conferral with opposing counsel, as required under C.R.C.P. 121, section 1-15(8)."

4

¶ 13    Panzlau filed another motion to recuse the judge (third recusal motion) on April 15, 2021.  Although Panzlau did not present new factual grounds for disqualification in the third recusal motion, she cited new legal authorities, including Rule 2.11 of the Colorado Code of Judicial Conduct and Rule 1.2 of the American Bar Association's Model Code of Judicial Conduct.

¶ 14    The district court did not stay the proceedings upon the filing of the third recusal motion and, during the pendency of the motion, the parties continued to submit filings to the court.  For example, on April 16, 2021, Panzlau filed an amended answer and counterclaims (second counterclaims) and a response to Maiker's pending request for an award of its attorney fees.  (Maiker asserted that it was entitled to an attorney fee award under the FED statute, section 13-40-123, C.R.S. 2022, and under the lease, which provides that "[u]nless a party is seeking exemplary, punitive, sentimental, or personal-injury damages, the court shall award the prevailing party from the non-prevailing party attorney's fees and other litigation costs."  Maiker also argued that it was entitled to recover attorney fees under section 13-17-102, C.R.S. 2022, because Panzlau's defense against the FED proceeding lacked

substantial justification.) In addition, Maiker filed a reply in support of its attorney fee motion on April 20, 2021; a motion for dismissal of certain of the second counterclaims on April 30, 2021, (discussed in further detail below); and a response to the third recusal motion on May 6, 2021. On May 12, 2021, the court entered an order granting Maiker's motion for attorney fees, in part. (Although Panzlau appears to present arguments regarding the attorney fee award in this appeal, she did not timely appeal this order. For this reason, we do not address the merits of her argument regarding the award of attorney fees.)

¶ 15    The district court did not rule on Panzlau's third recusal motion until May 14, 2021. Although the court denied it, the court did not award Maiker attorney fees for Panzlau's filing of the motion, as Maiker requested, because the court found that the third recusal motion was not substantially frivolous, groundless, or vexatious.

¶ 16    On appeal, Panzlau raises two issues concerning her recusal motions. She asserts that the district judge erred by (1) failing to recuse himself and (2) failing to stay the proceedings while the third motion to recuse was pending. (All of Panzlau's arguments on

6

appeal rest to some extent on her contention that the district judge was biased against her. Thus, our analysis of Panzlau's recusal motions also applies to the allegations of judicial bias underlying her other arguments.)

### 2. Standard of Review

¶ 17 We will not reverse a judge's decision on whether to disqualify himself or herself in a civil case unless the judge abused his or her discretion. *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 12, 482 P.3d 502, 508. "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law." *Black v. Black*, 2020 COA 64M, ¶ 118, 482 P.3d 460, 485. Additionally, we review the sufficiency of a motion to disqualify de novo. *Bocian*, ¶ 12, 482 P.3d at 509.

### 3. Legal Principles

¶ 18 If the judge is "interested or prejudiced, or has been of counsel for any party, . . . or is so related or connected with any party . . . as to render it improper for him to sit on the . . . proceeding," the judge shall be disqualified. C.R.C.P. 97. "[D]isqualification is appropriate when the motion and supporting affidavits allege sufficient facts from which it may reasonably be inferred that the

7

judge is prejudiced or biased, or appears to be prejudiced or biased, against a party . . . ." *Bocian*, ¶ 13, 482 P.3d at 509. The purpose behind disqualifying a judge who has the appearance of partiality is "to protect public confidence in the judiciary." *People in Interest of A.G.*, 262 P.3d 646, 650 (Colo. 2011). Upon the filing of a motion for disqualification, "all other proceedings in the case shall be suspended until a ruling is made thereon." C.R.C.P. 97.

### 4. The Judge Was Not Required to Recuse

¶ 19 Panzlau's three recusal motions rested on the same factual allegations — that the judge "had previously been a lawyer at a law firm" that "had previously represented [the Authority]" in a different matter, and that the judge was an "employee at this firm at the time [that matter] was represented." On appeal, Panzlau additionally alleges that the judge "concealed his prior relationship with [opposing counsel] via his charity 'Bright by Three' and failed to truthfully elucidate that previous relationship for the record" when Panzlau questioned the judge about potential conflicts.

¶ 20 As relevant here, the Colorado Code of Judicial Conduct provides that "[a] judge should disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be

8

questioned, including but not limited to the following circumstances: . . . [t]he judge . . . was associated with a lawyer who participated substantially as a lawyer in the matter during such association." C.J.C. 2.11(A)(5)(a). But the Code is "intended to protect public confidence in the judiciary rather than to protect the individual rights of litigants." *A.G.*, 262 P.3d at 650. C.R.C.P. 97, which provides the only legal basis for disqualification of a judge, does not refer to an "appearance of impropriety." "[I]n the absence of evidence demonstrating actual judicial bias or prejudice, a trial judge's potential violation of these rules does not mandate reversal." *Richardson v. People*, 2020 CO 46, ¶ 39, 481 P.3d 1, 8.

¶ 21     Maiker acknowledges that the Colorado appellate courts have not addressed whether a judge must be disqualified from a case in which the judge's former employer, but not the judge himself or herself, represented one of the parties in an unrelated case at the time the judge worked for the employer.

¶ 22     We join other jurisdictions in holding that, under these circumstances, the former employer's representation of the party "with regard to a matter unrelated to litigation before [the judge] does not automatically require recusal." *Nat'l Auto Brokers v. Gen.*

9

*Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978); *see also Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 235-36 (3d Cir. 2001) (holding that recusal is not required in a case where a party is represented by a firm of which the judge was a partner several years earlier); *In re Wilhite*, 298 S.W.3d 754, 756 (Tex. App. 2009) (upholding the denial of a motion to recuse in an asbestos case where the judge had been a partner at a law firm that had represented the defendant in asbestos litigation several years before, but in which the judge had not been involved).

¶ 23    Therefore, here, the judge was not automatically required to recuse.  Contrary to Panzlau's assertion, the judge's impartiality cannot "reasonably be questioned" based on the judge's prior relationship to the firm because the firm did not represent the Authority in "the matter" currently before the court.  *See* C.J.C. 2.11(A)(5)(a).  Additionally, because the judge asserted that "he was not aware the law firm he previously worked for had represented [the Authority] until [Panzlau] first moved for recusal," the earlier litigation involved a different subject matter (personal injury) from the subject matter of this case, "the case was resolved over five years before this case was filed," and the judge "was not involved in

10

it," the judge did not abuse his discretion by denying Panzlau's recusal motions. (The district judge could also have properly denied all three of Panzlau's recusal motions based on her failure to tender the supporting affidavit required under C.R.C.P. 97.)

¶ 24 Lastly, Panzlau did not raise in the district court the alleged conflict concerning the judge's "Bright by Three" charity as a basis for recusal, so we will not address such alleged conflict. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 64, 411 P.3d 1043, 1053.

### 5. The Judge Was Not Required to Stay the Proceedings Upon the Filing of the Third Recusal Motion

¶ 25 Panzlau asserts that, under Rule 97, once she filed the third recusal motion, the district judge was required to stay the proceedings until he ruled on the motion. We are not convinced that the rule requires a judge to stay the proceedings when a party files repetitive recusal motions that rest on the same factual allegations.

¶ 26 A division of this court addressed an analogous issue involving multiple competency motions in *People v. Rodriguez*, 2022 COA 98, ___ P.3d ___. There, the division held that "a successive competency motion that does not raise new indicia of incompetency

11

regarding a defendant who was previously examined and determined to be competent" does not "trigger the procedures" ordinarily required when a competency motion is filed — beginning with an order for a competency evaluation. *Id.* at ¶ 55, ___ P.3d at ___. The division explained that "[s]tripping district courts of their discretion to decline to order a competency evaluation where no such evaluation is warranted would allow lawyers to delay trials . . . by filing competency motion after competency motion." *Id.* at ¶ 57, ___ P.3d at ___.

¶ 27    We hold that the same logic applies here and therefore hold that Rule 97 does not require judges to stay the proceedings when a party files a successive recusal motion that rests on the same factual underpinnings as the party's prior unsuccessful motion to recuse. Although Panzlau referenced new legal authorities in her second and third recusal motions, all three of her recusal motions arose from the judge's former law firm's representation of the Authority in unrelated matters when the judge worked at the firm. Because the three recusal motions rested on the same alleged facts, the district judge was not required to stay the proceedings when Panzlau filed the third recusal motion. The judge did not err by

12

staying the proceedings for the further reason that, as noted in Part II.B.4, Panzlau failed to support the third recusal motion with the required affidavit. *See* C.R.C.P. 97.

### C. The Court's Dismissal of Panzlau's Counterclaims

#### 1. Additional Facts Concerning Panzlau's Counterclaims

¶ 28 On April 30, 2021, Maiker filed a motion for dismissal of certain of Panzlau's second counterclaims and to strike or, in the alternative, for a more definite statement regarding those counterclaims. The court granted the motion, in part. It ordered Panzlau to "amend her counterclaims of negligence, breach of contract, and constructive eviction in substantial conformance with the pleading standards of *Warne* [*v. Hall*, 2016 CO 50, 373 P.3d 588]," and to "state her claims clearly and in separately-numbered counts in compliance with C.R.C.P. 12(e)." The court dismissed all of Panzlau's other counterclaims for failure to state claims upon which relief can be granted under Rule 12(b)(5).

¶ 29 Panzlau filed amended counterclaims for negligence, breach of contract, and constructive eviction (the third counterclaims) on June 7, 2021.

¶ 30    Maiker moved to dismiss the third counterclaims, arguing that Panzlau's "claims for negligence and breach of contract . . . are preempted by the Colorado Premises Liability Act, [§ 13-21-115(2), C.R.S. 2022,]" and that her "constructive eviction [c]ounterclaim . . . does not state a claim pursuant to the pleading[] standards of *Warne*."

¶ 31    On July 27, 2021, Panzlau filed a response to Maiker's motion to dismiss the third counterclaims.  Panzlau's July 27 filing included a "statement" of her counterclaims.  That "statement" referred only to counterclaims for negligence arising under the Premises Liability Act and for constructive eviction.  Notably, the July 27 filing did not refer to the breach of contract counterclaim that Panzlau had pleaded in the first, second, and third counterclaims.

¶ 32    We cannot discern whether, through the July 27 filing, Panzlau merely sought to provide further information regarding certain of her pending counterclaims or sought to amend her counterclaims yet again.  If the latter, she failed to seek or obtain leave of court or Maiker's written consent for the amendment, as C.R.C.P. 15(a) requires.  (Maiker later advised the court that it did

14

not oppose Panzlau's attempt to amend the third counterclaims.) In any event, Maiker and the court treated the July 27 filing as a new set of amended counterclaims (the fourth counterclaims). For that reason, so do we.

¶ 33 On August 6, 2021, Maiker filed a motion to dismiss Panzlau's negligence (premises liability) and constructive eviction counterclaims (jointly, the tort counterclaims) in the fourth counterclaims pursuant to the Colorado Governmental Immunity Act, sections 24-10-101 to -120, C.R.S. 2022, (CGIA). In its motion, Maiker took the position that Panzlau had abandoned her breach of contract counterclaim by not incorporating it into the fourth counterclaims. Thus, Maiker asserted that only two counterclaims remained — the tort counterclaims — and that both failed because Maiker is a public entity for purposes of the CGIA and Panzlau had not provided Maiker with the timely written notice required under the CGIA. § 24-10-109(1), C.R.S. 2022. Because a claimant's failure to comply with the CGIA's notice requirement deprives a court of subject matter jurisdiction over the claimant's later tort claims against the public entity, Maiker argued that the court lacked subject matter jurisdiction over the tort counterclaims.

¶ 34    On October 22, 2021, the court entered an order pronouncing that Panzlau's "counterclaims are dismissed with prejudice." The court noted that, because Panzlau did not "assert a breach of contract claim" in the fourth counterclaims, only two counterclaims remained in the case — the tort counterclaims. And, according to the court, the tort counterclaims failed under the CGIA.

¶ 35    The court provided several grounds for its ruling. First, the court said "[t]here exist sufficient grounds to strike the pleadings and dismiss all counterclaims based on non-compliance with previous court orders." Second, in the alternative, the court analyzed the tort counterclaims under the CGIA because it found that Maiker is a public entity. The court also held that the tort counterclaims were subject to dismissal because Panzlau had failed to comply with the notice requirement in the CGIA and, therefore, the court lacked subject matter jurisdiction over those counterclaims.

2.    Dismissal Pursuant to the CGIA

¶ 36    Three of the issues Panzlau raises on appeal relate to the CGIA. Specifically, Panzlau asserts that (1) the court "allowed [opposing counsel] to determine [Panzlau's] date of injury" even

16

though the date was "unknowable" to opposing counsel; (2) "the Notice of Claim was properly filed . . . within the 182 day time limit" set forth in section 24-10-109(1); and (3) because Maiker had not complied with "all of the Laws" as its contract with Adams County required, Panzlau was entitled to a hearing (a *Trinity* hearing) under *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), to determine whether the CGIA applied to Maiker. All of these arguments fail.

### a. Applicable Law and Standard of Review

¶ 37    Except as specified in the CGIA, the CGIA immunizes public entities from "all claims for injury which lie in tort or could lie in tort." § 24-10-106(1), C.R.S. 2022; *see Maphis v. City of Boulder*, 2022 CO 10, ¶ 17, 504 P.3d 287, 291. "Public entity" includes "any county"; any "instrumentality, or political subdivision thereof organized pursuant to law[;] and any separate entity created by intergovernmental contract or cooperation only between or among the . . . county." § 24-10-103(5), C.R.S. 2022. The definition thus encompasses a county housing authority, which "shall constitute a public body, corporate and politic" that "exercise[s] public and essential governmental functions." § 29-4-505(1), C.R.S. 2022; *see*

17

*also Martinez v. CSG Redevelopment Partners LLLP*, 2019 COA 91,
¶ 3, 469 P.3d 491, 492 (concluding that a partnership was an
"instrumentality of a public entity within the meaning of the CGIA,
and therefore a public entity itself entitled to governmental
immunity") (*cert. granted* Mar. 30, 2020).

¶ 38    As a jurisdictional prerequisite to filing a tort claim against a
public entity, the CGIA provides that the complainant must provide
the public entity with written notice of his or her claim within 182
days after discovering the injury.  § 24-10-109(1).  "[F]ailure of
compliance [with the notice requirement] shall forever bar any such
action."  *Id.*  "[T]o start the running of the CGIA notice period, a
claimant need only have discovered that he or she has been
wrongfully injured, and need not yet know the cause of the injury or
the extent of the damage."  *Abrahamson v. City of Montrose*, 77 P.3d
819, 821 (Colo. App. 2003).

¶ 39    When reviewing a jurisdictional issue pertaining to
governmental immunity resting on disputed facts, we employ "the
clearly erroneous standard of review in considering the trial court's
findings of jurisdictional fact."  *Springer v. City & Cnty. of Denver*,
13 P.3d 794, 798 (Colo. 2000).  However, we review the

18

jurisdictional issue de novo "if the alleged facts are undisputed and the issue is purely one of law." *Id.*

> b.     The Court Lacked Subject Matter Jurisdiction Over the Tort Counterclaims Because Panzlau Failed to Comply with the CGIA's Notice Requirement

¶ 40     Both causes of action specified in Panzlau's fourth counterclaims "lie in tort or could lie in tort." § 24-10-106(1); *see also Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004) (holding that the premises liability statute is "the sole codification of landowner duties in tort"); *H & K Auto. Supply Co. v. Moore & Co.*, 657 P.2d 986, 988 (Colo. App. 1982) (noting that a claim of constructive eviction can be an action in tort or an action on a contract). Both counterclaims arise from the alleged damages and injuries caused by the mold in Panzlau's apartment.

¶ 41     Because Maiker is an instrumentality of Adams County, under the CGIA, Panzlau was required to prove that, before she asserted her tort counterclaims, she had provided Maiker with written notice of her tort claims within 182 days of her discovery of the alleged damages and injuries resulting from the presence of mold in her apartment. *See Martinez*, ¶ 3, 469 P.3d at 492; § 24-10-109(1), (6). (While we agree with Panzlau that Maiker must follow the law, we

are aware of no authority holding that the CGIA does not apply to a public entity that allegedly failed to comply with "all of the Laws." We note that Panzlau's allegations that Maiker violated the law are subsumed within her other arguments and other counterclaims.)

¶ 42      There is no dispute that Panzlau sent Maiker written notice of her mold-related claims on July 28, 2021. (We address only the timing of the notice. In light of our resolution of that issue, we need not also consider the validity of the notice.) In Panzlau's response to Maiker's motion to dismiss under the CGIA, she asserted that "her date of injury was the final day of mold exposure while removing her personal items from the premises, and the date that all of her personal belongings were left behind due to mold contamination. . . . [—] April 9th, 2021." Based on this date, Panzlau contended that she provided timely notice to Maiker. (If Panzlau discovered the facts underlying her tort counterclaims on April 9, 2021, then the deadline for the notice to Maiker would have been October 8, 2021.)

¶ 43      However, in an email to a Maiker employee dated January 19, 2021, Panzlau acknowledged that she had received the report showing elevated levels of mold in her apartment and stated that

20

there were "several HIGH spore counts of other forms of mold present ALL which cause either minor or major health problems." In the same email, Panzlau said that her ceiling was never repaired correctly from a flood in 2016, and that she had been suffering from "debilitating migraines with vomiting [and] cold sweats" while living in the apartment. The district court found that Panzlau's email "supports that the date of the discovery of the injury for [Panzlau's tort counterclaims] was prior to, and certainly not later than, January 19, 2021," and that her notice to Maiker was thus due by July 20, 2021 under the CGIA.

¶ 44    We hold that the district court applied the correct legal standard for determining when the notice period runs — from the time of *discovery* of the injuries and not, as Panzlau asserts, from the last day of exposure. (Panzlau did not allege that she had experienced any new mold-related injuries after January 19, 2021.) We additionally see no clear error in the district court's finding that Maiker "set forth ample evidence that [Panzlau] admitted to knowledge of her claimed injuries and even the source of mold as the cause, establishing a date of discovery on or before January 19, 2021, [which] makes her July 28 notice untimely."

21

¶ 45    Contrary to Panzlau's contention, the district court did not "allow" opposing counsel to determine Panzlau's date of injury. Rather, Panzlau's own communications with Maiker reflect the date by which she had actual knowledge of, and therefore had discovered, her mold-related injuries. The undisputed facts therefore establish that Panzlau failed to serve Maiker with timely notice of her mold-related tort claims under the CGIA.

¶ 46    Additionally, in light of these undisputed facts, the district court did not abuse its discretion by not conducting a *Trinity* hearing to determine whether the CGIA barred the tort counterclaims. *See Bilderback v. McNabb*, 2020 COA 133, ¶ 10, 474 P.3d 247, 251 ("We review the court's decision whether to conduct a *Trinity* hearing for abuse of discretion."). A court is not required to conduct a *Trinity* hearing where there is no factual dispute that the claimant failed to provide the public entity with timely notice of her claim. *See id.* at ¶ 9, 474 P.3d at 250 ("When there is no evidentiary dispute, the court may . . . decide the sovereign immunity question without a hearing, based on the pleadings alone.").

¶ 47    Accordingly, the district court properly dismissed Panzlau's tort counterclaims for lack of subject matter jurisdiction pursuant to the CGIA.

### 3.   Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted Under C.R.C.P. 12(b)(5)

¶ 48    Because we affirm the court's dismissal of the tort counterclaims based on Panzlau's failure to comply with the CGIA's notice requirement, we do not reach the court's alternative holding that the tort counterclaims fail because of Panzlau's failure to comply with previous court orders.  Although, as noted above, we assume, as did Maiker and the court, that Panzlau abandoned her breach of contract counterclaim by not including it in the fourth counterclaims, we next consider whether she sufficiently pleaded her breach of contract counterclaim in the event it survived the filing of the fourth counterclaims.

### a.   Legal Principles

¶ 49    To determine whether a plaintiff stated a claim upon which relief can be granted, Colorado courts employ the same "plausibility standard" for dismissal that the United States Supreme Court articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560

23

(2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *Warne,* ¶ 24, 373 P.3d at 595. Because the pleading requirements embodied in the Colorado rules were "borrowed from the prevailing interpretation of the corresponding federal rules, by both the lower federal courts and ultimately the Supreme Court itself," federal cases interpreting those pleading requirements are highly persuasive authority, particularly as we strive toward the "goal of establishing uniformity between state and federal judicial proceedings in this jurisdiction." *Id.* at ¶¶ 14-15, 373 P.3d at 593.

¶ 50 Under the plausibility test adopted in *Warne,* a claim is subject to dismissal unless "the factual allegations . . . [are] enough to raise a right to relief 'above the speculative level.'" *Walker v. Women's Pro. Rodeo Ass'n,* 2021 COA 105M, ¶ 37, 498 P.3d 648, 657 (quoting *Warne,* ¶ 9, 373 P.3d at 591). As our supreme court recently explained, a complainant must "allege sufficient facts that, if taken as true, show plausible grounds to support a claim for relief." *Jagged Peak Energy Inc. v. Okla. Police Pension & Ret. Sys.,* 2022 CO 54, ¶ 25, ___ P.3d ___, ___.

¶ 51 "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the

24

[plausibility] standard doesn't require a plaintiff to 'set forth a prima facie case for each element.'" *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192-93 (10th Cir. 2012)). But "[d]espite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 1981)). Thus, "although a plaintiff need not plead a *prima facie* case, she must at least set forth enough factual allegations to plausibly support each of the . . . basic elements" of her claim. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020); *see also Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1244 (10th Cir. 1989) (remanding to the district court "with directions to permit an amended complaint which outlines in clear, direct and understandable terms the precise factual allegations to support each essential element of these claims"). The plausibility standard thus "necessarily requires that a plaintiff include factual allegations for *each essential element*

of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (emphasis added), *abrogated on other grounds*, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022).

b.     Standard of Review

¶ 52     "We review de novo an order dismissing claims for failure to state a claim upon which relief can be granted under C.R.C.P. 12(b)(5)." *Walker*, ¶ 36, 498 P.3d at 657. "In doing so, we accept all factual allegations in the complaint as true, viewing them in a light most favorable to the plaintiff." *Hess v. Hobart*, 2020 COA 139M2, ¶ 11, 477 P.3d 771, 774.

c.     Panzlau's Breach of Contract Counterclaim

¶ 53     Panzlau's third counterclaims did not contain sufficient facts to show plausible grounds to support her breach of contract counterclaim. Panzlau's counterclaim apparently rested on her allegations that Maiker's handling of the mold situation violated (1) express terms of Panzlau's lease; and (2) the implied warranty of habitability, section 38-12-503, C.R.S. 2022.

¶ 54     Specifically, Panzlau alleged:

26

- "The apartment became uninhabitable on or before 23 December 2020" and "mold had been present long before that."

- "Maintenance staff routinely entered [Panzlau's] apartment without giving proper 24 hour notice for non-emergency purposes and while defendant was not present after expressly conveying to management that personal items had been stolen by maintenance staff and requesting that she be present during visits."

- "[Maiker] is materially in Breach of the Implied warranty of habitability due to the conditions of toxic mold that exist in the walls and ceiling of the Property."

- "Water and heat had been off for several days during November of 2020 when the boiler failed and had to be repaired or replaced . . . [in] violation of the Warranty of Habitability."

- "[Maiker] has knowingly engaged in failing to remediate the mold and water damaged materials in the property."

- "[Maiker] knowingly failed to install special air filtration device(s) in the apartment required by the law after the mold test returned positive."

- Maiker acted in bad faith.

¶ 55    First, Panzlau pleaded insufficient facts to assert an actionable claim for breach of an express provision of the lease. The elements of a prima facie breach of contract claim are: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). Here, because Panzlau cited to no specific provision of her lease that Maiker allegedly breached, she did not set forth sufficient factual allegations to plausibly support the "failure to perform" element of her breach of contract counterclaim.

¶ 56    Second, Panzlau pleaded insufficient facts to assert an actionable claim for breach of the implied warranty of habitability. Under section 38-12-503(2.2), which applies where, as here, "a residential premises has mold that is associated with dampness, . . . a landlord breaches the warranty of habitability if the landlord

28

fails" to "mitigate immediate risk from mold" by taking specific steps "[w]ithin ninety-six hours *after receiving reasonably complete written or electronic notice of the condition*" and execute additional remedial actions "[w]ithin a reasonable amount of time." § 38-12-503(2.2)(a),(c) (emphasis added). If the notice concerns a condition that "materially interferes with the tenant's life, health, or safety," the landlord must, at the request of the tenant, provide a comparable dwelling unit or a hotel room at no expense or cost to the tenant. § 38-12-503(2)(a)(II), (4)(a). However, Panzlau did not allege that she provided Maiker with the notice required to trigger the landlord's duties identified in subsections 38-12-503(2.2) and (4)(a). Absent an allegation that Panzlau provided Maiker with the statutory notice of mold, Panzlau's breach of contract counterclaim does not state plausible grounds for relief under the warranty of habitability statute.

¶ 57    Therefore, Panzlau's breach of contract counterclaim was subject to dismissal at the pleading stage, regardless of whether she abandoned it by not including it in the fourth amended counterclaims. For these reasons, we need not reach Panzlau's arguments that the court "ignored" (1) "the updated language of the

29

Habitability law modified by HB19-11701(b) regarding mold";

(2) "every single prayer for relief from the defendant — even relief

that was contractually provided for by the [contract with Adams

County] and the habitability laws['] prohibition on retaliation for

reporting mold in good faith"; (3) "[that Maiker's] [n]otice to quit was

for [an] improper period of time"; and (4) "the violation of

[c]ontractual [l]anguage of the Maiker Lease Agreement," which

allowed Maiker's counsel "to demand payment multiple times." The

court could not have addressed the merits of these issues because

the claim failed at the pleading stage.

### D.    Panzlau's Remaining Contention

¶ 58      Panzlau also contends that the court "arbitrarily and

capriciously deemed information and motions" that Panzlau

submitted throughout the case as lacking "valid subject matter, or

merit, or [as] not being specific enough — rendering them improper,

or moot, and allowing them to be struck in whole, in part or

dismissed . . . to minimize Maiker's Liability."

¶ 59      As Panzlau's notice of appeal indicates, she appealed only one

of the court's orders — the October 22, 2021, order dismissing her

remaining counterclaims. Our analysis above fully addresses

30

Panzlau's arguments regarding that order. To the extent Panzlau's arguments regarding other orders are properly before us, we reject her contention that the district court acted arbitrarily or capriciously by entering those orders.

### III.  Conclusion

¶ 60      The judgment is affirmed.

JUDGE FOX and JUDGE FREYRE concur.