SUMMARY August 22, 2024 2024COA96 No. 23CA1214, Houser v. CenturyLink — Civil Procedure — Signing of Pleadings — Obligations of Parties and Attorneys — Borrowing Plausibility — Reasonable Inquiry — Pleading Grounded in Fact In this case, a division of the court of appeals considers, as a matter of first impression in Colorado, whether an attorney’s inquiry is objectively reasonable under C.R.C.P. 11(a) if the attorney copies confidential witnesses’ factual statements from a complaint in another case without speaking to the confidential witnesses to confirm their statements. After reviewing federal cases addressing whether Fed. R. Civ. P. 11 prohibits copying confidential witness statements in this manner, the division concludes that C.R.C.P. 11(a) does not require an attorney to speak with confidential witnesses who are the source of factual allegations taken from a complaint in another case before incorporating those allegations The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion. 
 into the complaint in the attorney’s case; rather, the attorney can satisfy the obligation to conduct a reasonable inquiry in other ways. 
 COLORADO COURT OF APPEALS 2024COA96 Court of Appeals No. 23CA1214 Boulder County District Court No. 18CV30556 Honorable Dea M. Lindsey, Judge Dean Houser, Plaintiff-Appellant, v. CenturyLink, Inc.; Glen F. Post, III; R. Stewart Ewing, Jr.; David D. Cole; William A. Owens; Martha H. Bejar; Virginia Boulet; Peter C. Brown; W. Bruce Hanks; Jeffrey K. Storey; Steven T. Clontz; Mary L. Landrieu; Gregory J. McCray; Harvey P. Perry; Michael J. Roberts; Laurie A. Siegel; and Sunit S. Patel, Defendants-Appellees. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division III Opinion by JUDGE BERNARD* Dunn and Moultrie, JJ., concur Announced August 22, 2024 Ranson & Kane PC, Jason P. Kane, Denver, Colorado; Bottini & Bottini, Inc., Francis A. Bottini, Jr., Albert Y. Chang, La Jolla, California, for Plaintiff-
Appellant Wheeler Trigg O’Donnell LLP, Kathryn A. Reilly, Daniel N. Guisbond, Denver, Colorado, for Defendants-Appellees *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
 1 ¶ 1 Is it improper for plaintiffs in civil cases to incorporate factual allegations contained in complaints from other cases into their own complaints? For the purposes of this appeal, we will call this process “borrowing plausibility.” The “borrowing” part of this descriptor is obvious: an allegation in one complaint that is taken from another. The “plausibility” part refers to the reason for the borrowing: “[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.” Warne v. Hall, 2016 CO 50, ¶ 9 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). So the process of borrowing plausibility is designed to craft complaints that will weather C.R.C.P. 12(b)(5) motions to dismiss for “failure to state a claim upon which relief can be granted.” ¶ 2 Borrowing plausibility has prompted a disagreement among federal courts. On one side of the debate, some courts have concluded that borrowing plausibility is almost always improper. See Marcus Alexander Gadson, Stolen Plausibility, 110 Geo. L.J. 291, 299-300 (2021). On the other side of the debate, some courts think that, subject to some controls, borrowing plausibility can be acceptable. See id. 
 2 ¶ 3 This case requires us to address, for the first time in Colorado, one aspect of borrowing plausibility. It arises from the 2017 merger of defendant CenturyLink, Inc., which we shall call “the corporation,” and Level 3 Communications, Inc. Plaintiff, Dean Houser, whom we shall call “the shareholder,” filed a lawsuit against the corporation on behalf of himself and a proposed class of former Level 3 stockholders who acquired the corporation’s stock through the merger. ¶ 4 As we will explain in more detail below, the original complaint was dismissed, and the shareholder appealed. A division of this court affirmed in part and reversed in part, remanding the case so that the shareholder could file an amended complaint on one claim. Houser v. CenturyLink, Inc., 2022 COA 37, ¶¶ 50-51 (Houser I). ¶ 5 On remand, the shareholder filed an amended complaint, and the corporation filed a C.R.C.P. 12(b)(5) motion to dismiss it. The motion argued that (1) the amended complaint included several allegations copied from a different lawsuit against the corporation; (2) these allegations were based on interviews with confidential witnesses; (3) the shareholder’s attorney had not interviewed the confidential witnesses; and (4) the shareholder’s complaint had, 
 3 therefore, violated C.R.C.P. 11, which states that “[t]he signature of an attorney constitutes a certificate by him . . . that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact.” Although the motion did not use the phrase “borrowed plausibility,” that concept was the motion’s focus. ¶ 6 The trial court granted the corporation’s motion, and it dismissed the amended complaint. The court ruled that, because the shareholder’s counsel did not personally speak with “the unnamed former employees who made allegations against [the corporation] in the [other] complaint,” counsel had not conducted a “reasonable inquiry” into the amended complaint’s factual basis for the purposes of C.R.C.P. 11(a). The court then disregarded those allegations and decided that the remaining allegations were insufficient to state a claim. ¶ 7 The shareholder again appealed to this court. ¶ 8 We reverse and remand for further proceedings. In doing so, we conclude that (1) if a plaintiff takes investigative steps, such as those that the shareholder took in this case, the plaintiff may borrow plausibility by incorporating allegations from confidential 
 4 witnesses cited in another complaint; and (2) C.R.C.P. 11(a) does not require plaintiff’s counsel in such circumstances to speak directly with the confidential witnesses. I. Background ¶ 9 On December 15, 2016, the corporation and Level 3 filed a joint preliminary proxy statement/prospectus in a registration statement with the Securities and Exchange Commission, or “the SEC.” Houser I, ¶ 4. The SEC declared that the final registration statement, which incorporated the joint proxy statement/prospectus, became effective on February 13, 2017. Id. (When discussing these documents — the registration statement and the proxy statement/prospectus — together, we will call them “the offering documents.”) The merger closed on November 1, 2017. Id. ¶ 10 In June 2018, the shareholder filed this putative class action against (1) the corporation; and (2) certain of its officers and directors, along with some officers of Level 3 — namely, Glen F. Post, III, R. Stewart Ewing, Jr., David D. Cole, William A. Owens, Martha H. Bejar, Virginia Boulet, Peter C. Brown, W. Bruce Hanks, Jeffrey K. Storey, Steven T. Clontz, Mary L. Landrieu, Gregory J. 
 5 McCray, Harvey P. Perry, Michael J. Roberts, Laurie A. Siegel, and Sunit S. Patel — whom we shall call “the individual defendants.” Id. at ¶ 5. The original complaint asserted claims under sections 11, 12(a)(2), and 15 of the Securities Act of 1933, or “the Act.” 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. ¶ 11 More specifically, the original complaint alleged that the corporation and the individual defendants had made material misstatements in, and had omitted material information from, the offering documents. Among other claims, the complaint alleged that, when the offering documents became effective, the corporation had been engaged in widespread deceptive practices known as “cramming,” which included charging customers for services that they had not requested or authorized and charging them hidden fees. Houser I, ¶ 23. According to the complaint, the corporation’s senior management knew about the cramming, and despite their legal obligation to disclose it, they had not done so. Plus they had not disclosed that “a material amount of [the corporation’s] reported revenues and earnings had been realized by improper conduct, and thus that [its] revenues would decrease when customers switched to 
 6 a different carrier or forced [it] to cancel services that had not been authorized.” Id. ¶ 12 The corporation filed a C.R.C.P. 12(b)(5) motion to dismiss the original complaint. Among other things, the shareholder’s counsel asked for leave to amend the complaint based on facts that had come to light in other lawsuits related to the merger. Houser I, ¶¶ 6-7. The court granted the motion to dismiss, concluding that the complaint had not alleged facts showing that the corporation’s officers involved in the merger process knew, when the offering documents became effective, about any cramming, the extent of any cramming, or the potential effect of any cramming on the corporation’s revenues. Id. at ¶ 24. It also denied the shareholder’s motion for leave to amend the original complaint. Id. at ¶ 8. The shareholder appealed these rulings. ¶ 13 The Houser I division affirmed the decision to dismiss the shareholder’s original complaint. Id. at ¶ 51. But it reversed the order denying the shareholder’s motion for leave to amend the complaint “as it pertains to the omissions claim based on the cramming theory,” id., ruling that the shareholder “should be allowed to amend his complaint to include additional allegations 
 7 that [the corporation] failed to disclose the ‘cramming’ practices,” id. at ¶ 46. ¶ 14 In reaching this result, the division acknowledged that “facts relate[d] to the cramming theory alleged in the complaint, and specifically to [the corporation’s] knowledge of the nature and extent of the cramming practices and consequences when the [o]ffering [d]ocuments became effective,” had come to light after the shareholder had filed his original complaint. Id. at ¶ 50. Specifically, the division noted that, in In re CenturyLink Sales Practices & Securities Litigation, 403 F. Supp. 3d 712 (D. Minn. 2019), a Minnesota federal court had found those facts “sufficient to state a claim even under a heightened pleading test.” Houser I, ¶ 50. The division therefore concluded that it could not “say as a matter of law, at this juncture, that [the shareholder] would be unable to state omissions claims under sections 11, 12(a)(2), and 15 [of the Act] with the addition of such facts.” Id. But the division cautioned in a footnote addressing information from another complaint that, “[t]o the extent [the shareholder] desires to use such allegations on remand in an amended complaint, he must plead them as facts, not as allegations by someone else, and must do so 
 8 only after reasonable inquiry as required by C.R.C.P. 11.” Id. at ¶ 28 n.9. ¶ 15 Five months after the division decided Houser I, the shareholder filed the amended complaint that is the subject of this appeal. His counsel began by detailing the scope of his inquiry, stating that the allegations were based upon personal knowledge as to [the shareholder] and [the shareholder’s] own acts and upon information and belief as to all other matters based on the investigation conducted by and through [the shareholder’s counsel], which included, among other things, a review of [SEC] filings by [the corporation], the [corporation’s] press releases and earnings calls, analyst reports and media reports about the [corporation], review of public filings in the related cases, including [In re CenturyLink], and discussions with plaintiffs’ counsel in those actions, and review of other publicly-
available information about [the corporation]. [The shareholder] believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. ¶ 16 Among the allegations that followed in the amended complaint, several were copied or adapted from allegations in the In re CenturyLink complaint, which had been based on interviews with 
 9 unnamed former employes of the corporation — the confidential witnesses. The following examples are illustrative: Shareholder’s Amended Complaint In re CenturyLink Complaint “¶ 65. According to one former employee, cramming at [the corporation] was ‘happening all the time, all day, every day,’ and the sales representatives who engaged in these practices were routinely rewarded, including by being named as ‘Circle of Excellence’ honorees.” “¶ 89. According to FE-11 [a confidential witness and an unnamed former employee], cramming was ‘happening all the time, all day, every day,’ and that representatives who engaged in these practices included high sales performers who the [corporation] named as ‘Circle of Excellence’ honorees.” “¶ 67. . . . [The corporation] limited the number of credits or refunds that sales employees could offer to customers to resolve billing disputes. Specifically, credits of more than $50 needed a supervisor’s approval, which was frequently withheld because supervisors were rated on the amount of credits that they approved. In addition, the [corporation’s] computer system made it physically impossible to give back credits for more than three months’ worth of charges.” “¶ 85. . . . FE-12 [a confidential witness and an unnamed former employee] said that retention specialists were limited in the amount of ‘credits,’ or refunds, they could offer customers to resolve billing disputes. Specifically, credits for more than $50 needed a supervisor’s approval, and the [corporation’s] computer systems made it physically impossible to give back credits for more than three months’ worth of charges.” ¶ 17 The corporation filed its C.R.C.P. 12(b)(5) motion to dismiss the amended complaint, arguing, as is relevant to this appeal, that the allegations copied from the In re CenturyLink complaint “should 
 10 be ignored” because “[the shareholder] simply plagiarized” the complaint in that case “without averring that he or his counsel spoke with any of the [former employees] who provided the underlying facts.” (The corporation raised other arguments, too, including that the shareholder had failed to state a claim under section 11 of the Act against one of the individual defendants, that the shareholder had not established statutory seller status for the individual defendants under section 12(a)(2) of the Act, and that the shareholder had not established vicarious liability for the purposes of section 15 of the Act.) ¶ 18 After a hearing on the motion to dismiss, the trial court agreed with the corporation that the copied allegations should be ignored. It decided that the shareholder had not followed the division’s instruction in Houser I, which was that, to the extent the shareholder wished to use the In re CenturyLink allegations in an amended complaint, he “must do so only after reasonable inquiry as required by C.R.C.P. 11.” Houser I, ¶ 28 n.9. The court reasoned that [the shareholder] has made no assertions in either his [a]mended [c]omplaint or in his testimony [during the hearing on the motion to 
 11 dismiss] that he spoke with the unnamed former employees who made allegations against [the corporation] in the [In re CenturyLink] complaint. . . . The statements by all of the former . . . employees [of the corporation] made in the [In re CenturyLink] complaint were given in interviews conducted by various attorneys, none of whom are [the shareholder’s] counsel. [The shareholder’s] only arguments related to this matter are that [his counsel] conducted “painstaking research and review of the related lawsuits” and “discussions with plaintiffs’ counsel in those actions.” Those actions described by [the shareholder’s] counsel are insufficient to satisfy the reasonable inquiry standard. ¶ 19 After declining to consider the allegations it found to be “mere copies of or slightly altered from another complaint,” the court found that the shareholder’s “remaining allegations are insufficient to establish a plausible omissions claim” under the Act. As a result, it dismissed the amended complaint without addressing the other arguments raised in the corporation’s C.R.C.P. 12(b)(5) motion. II. Analysis ¶ 20 The shareholder contends that the trial court erred in three ways. First, the court should have considered the factual allegations copied from the In re CenturyLink complaint. Second, it 
 12 should not have decided that the allegations remaining after the In re CenturyLink allegations were removed were insufficient to state a claim for relief. Third, it should have allowed him to file a second amended complaint. ¶ 21 Because we agree with the shareholder’s first contention, we need not consider his second and third contentions. We reverse the trial court’s order dismissing the amended complaint, and we remand this case to that court to consider the amended complaint in its entirety. In doing so, we conclude that C.R.C.P. 11(a) does not require an attorney to speak with confidential witnesses who are the source of factual allegations taken from a complaint in another case before incorporating those allegations into the complaint in the attorney’s case; rather, as we explain below, the attorney can satisfy the obligation to conduct a reasonable inquiry in other ways. A. Standard of Review ¶ 22 We review de novo a district court’s decision to dismiss a complaint for failure to state a claim under C.R.C.P. 12(b)(5). Jagged Peak Energy Inc. v. Okla. Police Pension & Ret. Sys., 2022 CO 54, ¶ 24. “Applying the same standard as the district court, we 
 13 accept all factual allegations in the complaint as true and view them in the light most favorable to the non-moving party.” Id. Dismissing a claim under C.R.C.P. 12(b)(5) is proper “only when the facts alleged in the complaint cannot, as a matter of law, support the claim for relief.” Id. (quoting N.M. v. Trujillo, 2017 CO 79, ¶ 18). ¶ 23 As we noted above, Warne, ¶¶ 9, 24, adopted a “plausibility” standard for assessing C.R.C.P. 12(b)(5) motions. Under this standard, “to survive a motion to dismiss for failure to state a claim on which relief can be granted, a plaintiff must allege sufficient facts that, if taken as true, show plausible grounds to support a claim for relief.” Jagged Peak, ¶ 25. ¶ 24 The plausibility standard does not require a plaintiff to “‘plead a prima facie case, [but the plaintiff] must at least set forth enough factual allegations to plausibly support each of the . . . basic elements’ of [the] claim.” Adams Cnty. Hous. Auth. v. Panzlau, 2022 COA 148, ¶ 51 (quoting Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020)). B. Omissions Claims Under the Act ¶ 25 Because the division in Houser I, ¶ 51, granted the shareholder leave to amend his complaint only “as it pertains to the 
 14 omissions claim based on the cramming theory,” we briefly review the legal framework governing omissions claims under the Act. ¶ 26 “Sections 11 and 12(a)(2) impose strict liability for making material misleading statements or omissions in a registration statement (section 11) or in a prospectus or oral communication (section 12(a)(2)).” Id. at ¶ 13. “In the case of an alleged omission, a plaintiff must allege that the securities laws required the omitted material fact to be included or that its absence rendered statements in the registration statement or prospectus misleading.” Id. at ¶ 15. A statement is material if “a reasonable investor would consider it important in determining whether to buy or sell stock.” Id. at ¶ 18 (quoting Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1197 (10th Cir. 2013)). ¶ 27 Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 (2023), establishes a duty of disclosure in offering documents when a “trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant’s financial condition or results of operation.” Id. at ¶ 16 (quoting Slater, 719 F.3d at 1197). Because sections 11 and 12(a)(2) prohibit “omission[s] in 
 15 contravention of an affirmative legal disclosure obligation,” In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 360 (2d Cir. 2010), a defendant may be liable under either provision if it violates Item 303’s disclosure obligation, Jagged Peak, ¶ 30. ¶ 28 Section 15, in turn, is a vicarious liability provision, under which a “control person” can be liable if the control person’s company is liable under section 11 or section 12(a)(2). Houser I, ¶ 19 n.8. C. C.R.C.P. 11 ¶ 29 In evaluating the adequacy of an attorney’s inquiry into the factual basis of a pleading, Colorado courts apply an “objective reasonableness standard.” In re Trupp, 92 P.3d 923, 930 (Colo. 2004). That is, an attorney violates C.R.C.P. 11(a) “by failing to conduct an objectively reasonable inquiry prior to filing a signed pleading.” Id. ¶ 30 No published decision in Colorado has addressed whether an attorney’s inquiry is objectively reasonable under C.R.C.P. 11(a) if (1) the attorney borrows plausibility by copying factual statements made by confidential witnesses; (2) those factual statements are borrowed from a complaint in another case; and (3) the attorney 
 16 has not spoken to those confidential witnesses to confirm their statements. ¶ 31 But several federal courts have generally discussed the propriety of borrowing plausibility under Fed. R. Civ. P. 11, the federal counterpart to C.R.C.P. 11. Is Fed. R. Civ. P. 11 a close enough analogue to C.R.C.P. 11 to allow us to look to those cases for guidance? See, e.g., Ferraro v. Frias Drywall, LLC, 2019 COA 123, ¶ 15 (concluding that a Colorado court interpreting a Colorado rule may rely on federal cases interpreting a substantially similar federal rule). ¶ 32 There are some significant differences between C.R.C.P. 11 and Fed. R. Civ. P. 11. See, e.g., S.R.S., Inc. v. Southward, 2012 COA 19, ¶ 14. We recognize that, about thirty-two years ago, a division of this court concluded that C.R.C.P. 11 and Fed. R. Civ. P. 11 were “essentially identical.” Maul v. Shaw, 843 P.2d 139, 141 (Colo. App. 1992). But Fed. R. Civ. P. 11 was amended in 1993, and those amendments “significantly limit the applicability of federal precedent.” 11 Debra Knapp et al., Colorado Practice Series, Civil Procedure Forms & Commentary § 11:7 (3d ed. 2019). 
 17 ¶ 33 In the area that is the focus of this appeal, however, there are similarities between the two rules. ¶ 34 As we noted above, C.R.C.P. 11(a) states that an attorney’s signature on a pleading certifies that a complaint is “well grounded in fact” based on the “best of [the attorney’s] knowledge, information, and belief formed after reasonable inquiry.” C.R.C.P. 11(a). ¶ 35 Fed. R. Civ. P. 11(a), (b), and (b)(3) state that an attorney signing a pleading “certifies . . . to the best of [the attorney’s] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,” that “the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation.” ¶ 36 To summarize, although the language of the two rules is not identical, both rules have a certification requirement concerning factual allegations, and both rules state that part of what certification means is that factual allegations are based on the best of the attorney’s knowledge, information, and belief, formed after a reasonable inquiry. 
 18 ¶ 37 Like C.R.C.P. 11(a), Fed. R. Civ. P. 11 requires an attorney to conduct an “objectively reasonable inquiry” into the pleading’s factual basis. Holgate v. Baldwin, 425 F.3d 671, 677 (9th Cir. 2005). Courts assess objective reasonableness in light of “all the circumstances of a case,” Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401 (1990), focusing on the information available when the pleading was filed and considering factors including time constraints, the complexity of the subject matter, and the ease of access to the requisite information, Lake v. Hobbs, 643 F. Supp. 3d 989, 996 (D. Ariz. 2022). ¶ 38 Because of these similarities, we will consider federal cases addressing borrowed plausibility under Fed. R. Civ. P. 11. D. Borrowing Plausibility: Federal Approaches ¶ 39 As we mentioned before, federal cases reflect two schools of thought about whether Fed. R. Civ. P. 11 prohibits what happened here: the shareholder’s counsel borrowed plausibility by copying confidential witness statements, as well as other allegations, from another complaint into the one he filed in this case. ¶ 40 In re Lehman Brothers Securities & ERISA Litigation, No. 10 Civ. 6637, 2013 WL 3989066, at *3 (S.D.N.Y. July 31, 2013)
 19 (unpublished opinion), represents one of these schools. In that case, the federal court dismissed the plaintiff’s complaint after finding that the only allegations relating directly to the defendant’s allegedly fraudulent practices were “based on confidential witness statements originally recounted in a separate complaint filed by separate counsel in a separate action.” Id. The court acknowledged that the Second Circuit had not ruled on this exact issue and that district courts had reached different conclusions as to whether it was “appropriate for a plaintiff at the pleading stage to rely on confidential witness statements recounted in other complaints.” Id. at *4. But the court concluded that the plaintiff’s counsel had violated Fed. R. Civ. P. 11: In this [c]ourt’s opinion, it would be inappropriate to give any weight to these alleged confidential witness statements. There is no suggestion that counsel in this action has spoken with these confidential witnesses or even knows who they are. Fed. R. Civ. P. 11 provides that by presenting a pleading to the court, counsel certifies that to the best of his or her “knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support.” When citing alleged confidential witnesses in a complaint, the certification means that counsel has spoken 
 20 with these confidential witnesses and knows who they are. Id. (footnote omitted). ¶ 41 In explaining its reasoning, the Lehman Brothers court expressed concern over the potential for lawyers to behave unethically. Although it acknowledged that “a plaintiff may rely in its complaint on witness statements recounted in newspaper articles and government reports,” it concluded that the probative value of those sources is “much greater than that of confidential witness statements recounted in another complaint” because “[t]here is significant motive and opportunity for counsel in any case to misuse or mischaracterize confidential witness statements in a pleading.” Id.; see also Laurence A. Steckman & Joseph T. Johnson, When May a Litigant Rely in Its Own Complaint on Allegations from Another Complaint? — Lipsky v. Commonwealth United Corp. and Its Progeny — Still an Unresolved Question, 32 Touro L. Rev. 351, 372-78 (2016). ¶ 42 Similarly, in VNB Realty, Inc. v. Bank of America Corp., No. 11 Civ. 6805, 2013 WL 5179197, at *4 (S.D.N.Y. Sept. 16, 2013)
(unpublished opinion), the federal court granted the defendants’ 
 21 motion to dismiss after finding that allegations in the complaint were “copied almost verbatim” from another complaint that relied on “confidential sources . . . with whom [the plaintiff’s] counsel obviously has not had direct contact.” As an initial matter, the court noted that “[t]here is no evidentiary rule against plagiarism,” and that it need not strike allegations copied from another complaint merely because they were not counsel’s original work. Id. But the court ruled that the plaintiff’s reliance on confidential witness statements recounted in another complaint was impermissible under Fed. R. Civ. P. 11 because the plaintiff did “not contend that it has spoken with the confidential witnesses it quotes, nor that it knows their identities or has taken any steps to authenticate their statements.” Id. at *7. ¶ 43 By drawing its factual allegations from the statements of confidential witnesses and other allegations in another complaint, the court held, the plaintiff “is attempting to rely on the substance of those allegations without being held responsible for certifying that they are supported by some factual basis, or at least that the witnesses did in fact make such statements.” Id. As in Lehman Brothers, the VNB court explained that its ruling was motivated in 
 22 part by concern over lawyers’ potential unethical conduct: “Allowing parties to rely on confidential witness statements drawn from another complaint also has the potential to incentivize collusion and raises the possibility of complaints that are stocked with fabricated confidential witness statements placed in other complaints.” Id. at *7 n.6. ¶ 44 Other courts have likewise concluded that Fed. R. Civ. P. 11 prohibits copying confidential witness statements from another complaint. See, e.g., Amorosa v. Gen. Elec. Co., No. 21-CV-3137, 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022)(unpublished opinion)(granting the defendants’ motion to dismiss where the plaintiff’s complaint relied on statements of confidential witnesses described in another complaint and the plaintiff, “by his own admission, verified none of what he copied”); In re UBS AG Sec. Litig., No. 07 Civ. 11225, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012)(unpublished opinion)(declining to consider allegations “taken directly from uncorroborated allegations embedded in a complaint in another action . . . for which counsel has not conducted independent investigation”), aff’d sub nom. City 
 23 of Pontiac Policemen’s & Firemen’s Ret. Sys. v. UBS AG, 752 F.3d 173 (2d Cir. 2014). ¶ 45 But this view, as we indicated above, is not universal. The second, and contrary, school of thought is represented by cases such as In re Teva Securities Litigation, 671 F. Supp. 3d 147 (D. Conn. 2023). The federal court in that case rejected the defendants’ contention that, by copying allegations based on confidential witness statements from another complaint in a related case, the plaintiffs had failed to conduct a “reasonable investigation.” Id. at 191. Fed. R. Civ. P. 11, the court held, “does not require counsel to certify that counsel has spoken with the confidential witnesses and knows who they are.” Id. at 193. In distinguishing the defendants’ authorities, including some of the cases that we have cited above, the In re Teva court noted three important considerations. ¶ 46 First, unlike in cases such as Amorosa, in which the plaintiff “verified none of what he copied,” the In re Teva plaintiffs “indicated that they did investigate the complaints upon which they relied.” Id. at 192-93 (quoting Amorosa, 2022 WL 3577838, at *3). ¶ 47 Second, the plaintiffs had “attest[ed] in good faith” that their allegations were based on information and belief considering the 
 24 investigation conducted by the plaintiffs’ attorney and that “discovery will provide evidentiary support for allegations pled on information and belief.” Id. at 193. Fed. R. Civ. P. 11, the court held, “requires nothing more.” Id. ¶ 48 And third, the court presiding over the related case, from which the allegations had been copied, had “already determined that the confidential witness statements were sufficient to support a properly pled complaint.” Id. at 194. ¶ 49 These considerations are echoed in other cases holding that plaintiffs may utilize allegations of confidential witnesses copied from other complaints. In Schwab Capital Trust v. Celgene Corp., No. CV 20-3754, 2021 WL 1085474, at *10 (D.N.J. Mar. 22, 2021)(unpublished opinion), for example, the federal court ruled that the plaintiffs could rely on confidential witness statements cited in another complaint even though, as the defendants argued, the plaintiffs “do not even know who the [confidential witnesses] are.” In declining the defendants’ invitation to follow Lehman Brothers, the court noted that, “[c]ritically,” a court had “already credited the information provided by [the] confidential witness” in 
 25 the complaint from which the witness statements had been copied. Id. ¶ 50 In Homeward Residential, Inc. v. Sand Canyon Corp., No. 12 Civ. 5067, 2014 WL 12791757, at *7 (S.D.N.Y. Mar. 31, 2014)(unpublished opinion), vacated in part on other grounds, No. 12 Civ. 5067, 2014 WL 4680849 (S.D.N.Y. Sept. 17, 2014), the federal court held that the plaintiffs could rely on confidential witnesses cited in another complaint because the plaintiffs had undertaken their own investigation, although it did not include speaking to the confidential witnesses, and they had attested that the confidential witness statements were included “on information and belief in their truth and on reasonable belief that further inquiry and discovery from [the defendant] and others will provide evidence of [their] truth.” Like the court in In re Teva, the Homeward Residential court concluded that Fed. R. Civ. P. 11 required nothing more — specifically, it did not require “counsel to certify that he has spoken with the confidential witnesses and knows who they are.” Id. ¶ 51 Still other cases have reached the same conclusion on more general grounds. 
 26 ¶ 52 In 380544 Canada, Inc. v. Aspen Technology, Inc., 544 F. Supp. 2d 199, 224 (S.D.N.Y. 2008), the court held that it was “of no moment that the accounts of [confidential informants] are block-
quoted” from another complaint because (1) “[a] plaintiff is not required to reveal the identity of confidential sources at the pleading stage”; and (2) a court must accept allegations in a complaint “as true, regardless of whether the allegations are taken from a complaint in another case.” “Although the confidential informants are not personally known” to the plaintiffs or their counsel, the court held, “the fact that the informants’ accounts are derived from an earlier pleading in a different case simply does not render the instant pleading inadequate.” Id. at 225. ¶ 53 And in Waterford Township Police & Fire Retirement System v. Smithtown Bancorp, Inc., No. 10-CV-864, 2014 WL 3569338, at *5 (E.D.N.Y. July 18, 2014)(unpublished opinion), after acknowledging that courts “have taken different positions on the question” of whether “plaintiffs may utilize allegations of confidential informants drawn from other complaints,” the court held that it would consider the copied allegations “[g]iven the ‘strong presumption against 
 27 striking portions of the pleadings.’” Id. (quoting In re Fannie Mae 2008 Sec. Litig., 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012)). E. Application ¶ 54 Considering the facts of this case in light of the cases that we have just discussed, we conclude that the shareholder’s counsel did not violate C.R.C.P. 11 by copying allegations, including those from confidential witness statements, from the In re CenturyLink complaint without speaking to the witnesses. We reach this conclusion for five reasons. ¶ 55 First, as in In re Teva and Homeward Residential, the shareholder’s counsel undertook an independent investigation, although the investigation did not include speaking with the confidential witnesses. As the amended complaint explains, counsel reviewed the corporation’s SEC filings, press releases, and earnings calls, reviewed analyst and media reports about the corporation, and — importantly — reviewed the public filings and conferred with counsel in the related cases, including In re CenturyLink. See Strougo v. Barclays PLC, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015)(holding that the plaintiffs could copy allegations from the complaint in another case if “counsel for 
 28 plaintiffs have indicated that they have reached out to attorneys [in the other case] to verify the allegations in the [c]omplaint”). This case is therefore distinguishable from cases such as Amorosa, in which the plaintiff “verified none of what he copied,” 2022 WL 3577838, at *3, and VNB, in which the plaintiff had not “taken any steps to authenticate” the statements of the confidential witnesses, 2013 WL 5179197, at *7. ¶ 56 Second, again as in In re Teva and Homeward Residential, the shareholder attested in good faith that (1) the allegations in the amended complaint were “based upon personal knowledge as to [the shareholder] and [the shareholder’s] own acts and upon information and belief as to all other matters based on the investigation conducted by and through [the shareholder’s counsel]”; and (2) the shareholder believed that “substantial additional evidentiary support will exist for the allegations . . . after a reasonable opportunity for discovery.” In our view, C.R.C.P. 11(a) “requires nothing more.” In re Teva, 671 F. Supp. 3d at 193; see also IBT Emp. Grp. Welfare Fund v. Compass Mins. Int’l, Inc., ___ F. Supp. 3d ___, 2023 WL 8596108, at *8-9 (D. Kan. Dec. 12, 2023)(holding — after noting that “there is no binding Tenth Circuit 
 29 or Supreme Court opinion on the issue” — that a plaintiff who copied allegations verbatim from an SEC consent order after an investigation that included reviewing the company’s “SEC filings, press releases, analyst and media reports, [and] other public reports and information about the [c]ompany” had conducted “a reasonable inquiry under the circumstances for the purposes of [Fed. R. Civ. P. 11]”). ¶ 57 Third, as in In re Teva and Schwab Capital Trust, another court has already determined that the confidential witness statements that the shareholder copied into his complaint in this case are sufficient to support a properly pled complaint. Indeed, as the Houser I division observed, the federal court in In re CenturyLink decided the facts in that case’s complaint related to the corporation’s “knowledge of the nature and extent of the cramming practices” were sufficient to state a claim even under the heightened pleading test applicable to fraud cases. Houser I, ¶ 50. ¶ 58 Fourth, we think that the shareholder followed the Houser I division’s remand instructions. Specifically, Houser I held that, to survive a motion to dismiss, the shareholder must make allegations sufficient “to show, above the speculative level, that [the 
 30 corporation’s] officers or executives were aware of [the cramming] practices [and] the extent of those practices and the potential negative effect on company revenue when the [o]ffering [d]ocuments became effective.” Id. at ¶ 29. And the division explicitly contemplated that the shareholder could make those allegations “with the addition of . . . facts” from the In re CenturyLink complaint. Id. at ¶ 50. We conclude that, under the facts of this case and considering authority such as In re Teva, Schwab Capital Trust, and Homeward Residential, the shareholder’s counsel’s inquiry was objectively reasonable even though he did not speak with the confidential witnesses. See In re Trupp, 92 P.3d at 930. ¶ 59 Fifth, in considering the reasoning of the federal cases, we are not persuaded that the concerns expressed by the Lehman Brothers and VNB courts regarding potential unethical behavior by attorneys warrants raising the bar for plaintiffs to access the justice system. See Gadson, 110 Geo. L.J. at 314 (“It is worrisome enough that in precluding borrowed plausibility, courts could be forced to dismiss meritorious complaints. It is perhaps even more worrisome that some plaintiffs might be deterred from bringing meritorious claims in the first place.”). 
 31 ¶ 60 Should a plaintiff file a complaint “stocked with fabricated confidential witness statements placed in [an]other complaint[],” VNB, 2013 WL 5179197, at *7 n.6, Colorado law provides for appropriate sanctions. Under section 13-17-102(2), (4), C.R.S. 2023, for example, a court shall award attorney fees “against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification,” meaning that the action was “substantially frivolous, substantially groundless, or substantially vexatious.” We therefore respectfully disagree with the Lehman Brothers court that there is “significant motive” for counsel “to misuse or mischaracterize confidential witness statements in a pleading.” 2013 WL 3989066, at *4. But, acknowledging that such a possibility exists, we need not raise the pleading standard to forestall it because the threat of existing sanctions, such as the ones we just discussed, act as a deterrent. ¶ 61 We are unpersuaded by the corporation’s remaining assertions. We are aware that “the purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility . . . to validate the truth and legal reasonableness of 
 32 the papers filed.” Pavelic & LeFlore v. Marvel Ent. Grp., 493 U.S. 120, 126 (1989)(construing Fed. R. Civ. P. 11); see also People v. Wollrab, 458 P.3d 908, 915 (Colo. O.P.D.J. 2019). In this regard, relying on cases such as Del Giudice v. S.A.C. Capital Management, LLC, Civ. A. No. 06-1413, 2009 WL 424368, at *6 (D.C.N.J. Feb. 19, 2009)(unpublished opinion), and Attia v. Google LLC, No. 17-CV-
06037, 2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018)(unpublished opinion), the corporation submits that “an investigation requires counsel to personally investigate the veracity of the allegations in the pleading. Counsel may not simply repeat allegations made in other complaints and present them as their own.” The corporation continues that the shareholder’s counsel did not satisfy his nondelegable duty because he relied on the inquiry conducted by the attorney in In re CenturyLink, who had spoken with the confidential witnesses. ¶ 62 We disagree. Neither Del Giudice nor Attia is categorical. The federal court in Del Giudice stated that “[a] filing attorney . . . may not rely solely upon the inquiry conducted by another attorney, as the Rule 11 duty of investigation is personal and non-delegable.” 2009 WL 424368, at *6 (emphasis added). And the federal court in 
 33 Attia observed that, “[g]iven the nondelegable duty imposed on attorneys under Rule 11, courts routinely strike allegations that rely exclusively on the analysis and investigation of different attorneys in different actions.” 2018 WL 2971049, at *15 (emphasis added). ¶ 63 As indicated above, the shareholder’s counsel took a variety of steps to verify the allegations in the In re CenturyLink complaint before filing the amended complaint; he did not solely or exclusively rely on the inquiry of the attorney who had filed the In re CenturyLink complaint. See Me. State Ret. Sys. v. Countrywide Fin. Corp., No. 2:10-CV-0302, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011)(unpublished opinion) (An attorney’s nondelegable duty “means [p]laintiffs cannot rely on allegations from complaints in other cases if the [p]laintiffs themselves have not investigated the allegations.”)(emphasis added). And as a noted commentator on Fed. R. Civ. P. 11 once observed, the Rule by its terms does not require signing counsel to have personally performed the inquiry. What it does require is that signing counsel have the requisite “knowledge, information, and belief.” . . . The duty of inquiry therefore should be regarded as nondelegable but capable of being satisfied by the attorney’s 
 34 acquisition of the product of inquiry conducted by others. William W. Schwarzer, Sanctions Under the New Rule 11 – A Closer Look, 104 F.R.D. 181, 186-87 (1985). ¶ 64 We are also aware that Houser I, ¶ 12, stated that “[a]llowing a party to rely on allegations in a complaint in another case would be inconsistent with C.R.C.P. 8(a)’s requirement that the complaint contain a short and plain statement of the claim showing that the plaintiff is entitled to relief.” As we have demonstrated when analyzing C.R.C.P. 11(a), we conclude that the shareholder’s amended complaint in this case is consistent with C.R.C.P. 8(a) because it contained such a short and plain statement of the claims based on allegations from the In re CenturyLink complaint. ¶ 65 Last, the corporation asserts the trial court decided, on grounds other than its ruling concerning the allegations from the In re CenturyLink complaint, that the shareholder failed to state claims under sections 11, 12(a)(2), and 15 of the Act. But it is clear from reading the court’s order that its ruling on each of these three claims was based on eliminating the factual allegations copied from the In re CenturyLink complaint. 
 35 • In ruling on the section 11 claim, the court wrote: “After omitting [the shareholder’s] allegations which were mere copies of or slightly altered from another complaint,” the shareholder’s “remaining allegations are insufficient to establish a plausible omissions claim under” section 11. • In ruling on the section 12(a)(2) claim, the court wrote that claim “fail[ed] for the same reasons” as the section 11 claim. This meant that the court analyzed the section 12(a)(2) claim after omitting the information in the shareholder’s complaint taken from the In re CenturyLink complaint. • When dealing with the section 15 claim, the court recognized that it was a vicarious liability claim. So, “because the section 11 and section 12(a)(2) claims fail[ed],” the section 15 claim “must also fail.” Again, the section 11 and section 12(a)(2) claims failed only after the court had omitted the information in the shareholder’s complaint taken from the In re CenturyLink complaint. ¶ 66 We conclude that the trial court erred by deciding that the shareholder had not conducted the reasonable inquiry required by 
 36 C.R.C.P. 11(a) concerning the factual allegations copied from the In re CenturyLink complaint. ¶ 67 The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. On remand, the trial court shall, when ruling on the corporation’s C.R.C.P. 12(b)(5) motion, consider (1) the shareholder’s complaint in its entirety, including all the factual allegations copied from the complaint in In re CenturyLink; and (2) the additional issues that the corporation raised in its motion. We express no opinion on the merits of these issues. JUDGE DUNN and JUDGE MOULTRIE concur.