1
 2026 CO 20 CenturyLink, Inc.; Glen F. Post, III; R. Stewart Ewing, Jr.; David D. Cole; William A. Owens; Martha H. Bejar; Virginia Boulet; Peter C. Brown; W. Bruce Hanks; Jeffrey K. Storey; Steven T. Clontz; Mary L. Landrieu; Gregory J. McCray; Harvey P. Perry; Michael J. Roberts; Laurie A. Siegel; and Sunit S. Patel, Petitioners v. Dean Houser, Respondent No. 24SC644Supreme Court of Colorado, En BancApril 6, 20262
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 23CA1214
 
 
          
 Attorneys for Petitioners: Wheeler Trigg O'Donnell LLP
 Frederick R. Yarger Kathryn A. Reilly Daniel N. Guisbond
 Denver, Colorado
 
 
          
 Attorneys for Respondent: Ranson & Kane PC Jason P. Kane
 Denver, Colorado Bottini & Bottini, Inc. Francis A.
 Bottini, Jr. Albert Y. Chang La Jolla, California
 
 3
 
          
 Attorneys for Amicus Curiae Colorado Defense Lawyers
 Association: Berg Hill Greenleaf Ruscitti LLP Rudy E. Verner
 Geoffrey C. Klingsporn Andrew C. Fischer Boulder, Colorado
 
 
          
 Attorneys for Amicus Curiae Securities Industry and Financial
 Markets Association: Womble Bond Dickinson (US) LLP Kendra N.
 Beckwith Kenneth F. Rossman Denver, Colorado
 
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and JUSTICE
 BLANCO joined.
 
 4
 
          
 OPINION
 
 
          
 GABRIEL, JUSTICE
 
 
          ¶1
 In this class action brought by shareholders against a
 corporation alleging securities law violations, we granted
 certiorari to decide whether C.R.C.P. 11(a)'s duty to
 conduct an objectively reasonable inquiry is satisfied when
 an attorney copies information, including allegations by
 confidential witnesses, from complaints in related lawsuits
 involving some of the same defendants.[1]
 
 
          ¶2
 We now conclude that counsel must conduct a sufficient
 investigation to support the allegations contained in a
 complaint, at least on information and belief. The extent of
 the investigation required, however, is highly fact
 dependent, and, therefore, a plaintiff's copying of
 allegations contained in complaints in related actions does
 not alone violate counsel's duty under C.R.C.P. 11(a) but
 rather must be considered in the context of each case.
 Applying those principles here, we further conclude that
 plaintiff Dean Houser's counsel conducted a sufficient
 investigation to allow counsel to include in the amended
 complaint in this case, consistent with counsel's
 obligations under C.R.C.P. 11, allegations that were
 
 5
 
 contained in complaints in related actions against some of
 the same defendants named here.
 
 
          ¶3
 Accordingly, we affirm the judgment of the court of appeals
 division below.
 
 
          I.
 Facts and Procedural History
 
 
          ¶4
 In 2018, Houser filed a securities class action against
 CenturyLink, Inc. and Glen F. Post, III, R. Stewart Ewing,
 Jr., David D. Cole, William A. Owens, Martha H. Bejar,
 Virginia Boulet, Peter C. Brown, W. Bruce Hanks, Jeffrey K.
 Storey, Steven T. Clontz, Mary L. Landrieu, Gregory J.
 McCray, Harvey P. Perry, Michael J. Roberts, Laurie A.
 Siegel, and Sunit S. Patel (collectively,
 "defendants") in Boulder County District Court.
 Houser filed the complaint on behalf of all persons and
 entities who had purchased or acquired CenturyLink stock
 pursuant or traceable to CenturyLink's Registration
 Statement and Prospectus (the "Offering Documents")
 issued in connection with the merger of CenturyLink, Level 3
 Communications, Inc., and their subsidiaries. Houser alleged,
 among other things, that the Offering Documents were
 negligently prepared and, as a result, contained untrue
 statements of material fact, omitted material information,
 and failed to make adequate disclosures required by the
 applicable rules and regulations. Houser further alleged that
 the Offering Documents were false and misleading because they
 contained material omissions.
 
 6
 
          ¶5
 Defendants moved to dismiss the complaint pursuant to
 C.R.C.P. 12(b)(5) for failure to state a claim upon which
 relief can be granted. In this motion, defendants argued, as
 pertinent here, that (1) as a matter of law, none of the
 affirmative statements that Houser cited were misleading; and
 (2) the majority of the alleged omissions were, in fact,
 disclosed, and the remainder were not facts required to be
 disclosed.
 
 
          ¶6
 Approximately thirteen months after defendants filed their
 motion to dismiss and while the motion was still pending,
 Houser filed a notice of supplemental authority citing In
 re CenturyLink Sales Practices & Securities
 Litigation, 403 F.Supp.3d 712 (D. Minn. 2019)
 ("CenturyLink"), a parallel securities
 fraud class action lawsuit and multidistrict litigation
 proceeding pending in the United States District Court for
 the District of Minnesota. According to Houser, the
 plaintiffs in that case had alleged that CenturyLink and its
 executives had made false and misleading statements regarding
 the purportedly widespread practice of "cramming,"
 which, citing the complaint in that case, the
 CenturyLink court described as "adding services
 to customers' accounts without authorization, deceiving
 customers about the prices they would be charged, and
 misquoting prices by failing to disclose that
 'bundles' included fees for optional services that
 the customers did not need or authorize."
 CenturyLink, 403 F.Supp.3d at 720.
 
 7
 
          ¶7
 Several months later, the district court conducted a hearing
 on CenturyLink's motion to dismiss, and four days after
 that hearing, Houser filed a supplemental brief responding to
 questions that the court had asked during the hearing. In
 this brief, Houser also requested leave to amend his
 complaint, if the court were inclined to grant
 defendants' motion to dismiss. In support of this
 request, Houser cited the "substantial new facts"
 that had come to light since the current action was filed, as
 reflected in the CenturyLink case.
 
 
          ¶8
 The district court, however, granted defendants' motion
 to dismiss with prejudice and denied Houser's request for
 leave to file an amended complaint. In so ruling, the court
 determined that Houser had "failed to plead with
 particularity any material misstatements or omissions in
 violation of Section 11 or Section 12(a)(2)" of the 1933
 Securities Act.
 
 
          ¶9
 Houser appealed, and in a unanimous, published opinion, a
 division of the court of appeals affirmed in part, reversed
 in part, and remanded the case for further proceedings.
 Houser v. CenturyLink, Inc., 2022 COA 37, ¶ 51,
 513 P.3d 395, 407 ("Houser I").
 Specifically, the division (1) affirmed the district
 court's order dismissing Houser's claims under
 C.R.C.P. 12(b)(5); (2) reversed the court's order denying
 Houser's motion for leave to amend the complaint as it
 pertained to Houser's omissions claims based on the
 cramming theory; and (3) otherwise affirmed the district
 court's order denying Houser's motion for leave to
 amend.
 
 8
 
 Houser I, ¶¶ 50-51, 513 P.3d at 407. In
 support of this determination, the division opined that it
 could not at that point say, as a matter of law, that Houser
 would be unable to state omissions claims under sections 11,
 12(a)(2), and 15 with the addition of facts related to the
 cramming theory that the CenturyLink court had found
 sufficient to state a plausible claim. Id. at ¶
 50, 513 P.3d at 407. The division cautioned, however, that,
 to the extent that, on remand, Houser desired to use
 allegations made by another party in a separate lawsuit,
 "he must plead them as facts, not as allegations by
 someone else, and must do so only after reasonable inquiry as
 required by C.R.C.P. 11." Id. at ¶ 28 n.9,
 513 P.3d at 403 n.9.
 
 
          ¶10
 Houser then filed an amended class action complaint,
 individually and on behalf of all former shareholders of
 Level 3 Communications, who, according to Houser, had
 acquired CenturyLink stock pursuant or traceable to the
 CenturyLink Offering Documents issued in connection with the
 merger between CenturyLink and Level 3. Defendants included
 certain executive officers and directors of CenturyLink at
 the time of the merger and certain executive officers and
 directors of Level 3 who had joined CenturyLink after the
 merger.
 
 
          ¶11
 In the amended complaint, Houser alleged:
 
 
 Plaintiff Dean Houser ("Plaintiff"), individually
 and on behalf of all others similarly situated, by
 Plaintiff's undersigned attorney, for Plaintiff's
 amended complaint against Defendants, alleges the following
 based upon personal knowledge as to Plaintiff and
 Plaintiff's own acts and upon information and belief as
 to all other matters based on the investigation conducted by
 and through
 
 9
 
 Plaintiff's attorneys, which included, among other
 things, a review of U.S. Securities and Exchange Commission
 ("SEC") filings by CenturyLink, Inc.
 ("CenturyLink" or the "Company"), the
 Company's press releases and earnings calls, analyst
 reports and media reports about the Company, review of public
 filings in the related cases, including State v.
 CenturyTel Broadband Services, LLC, No. 02-CV-17-3488
 (Minn. Dist. Ct., Cnty. of Anoka), In re CenturyLink
 Sales Practices &Securities Litigation, MDL No.
 17-2795 (MJD/KMM) (D. Minn.), and Heiser v. CenturyLink,
 Inc., No. CV2017-008928 (Az. Super. Ct., Cnty. of
 Maricopa), and discussions with plaintiffs' counsel in
 those actions, and review of other publicly-available
 information about CenturyLink. Plaintiff believes that
 substantial additional evidentiary support will exist for the
 allegations set forth herein after a reasonable opportunity
 for discovery.
 
 
 (Footnote omitted.)
 
 
          ¶12
 Houser further alleged, among other things, that the Offering
 Documents were false and misleading and omitted material
 information regarding systemic and ongoing illegal cramming
 practices at CenturyLink that existed at the time, were known
 to CenturyLink's senior management, and were likely
 to—and, in fact, did—have a material impact on
 CenturyLink's revenues and results of operations.
 Specifically, Houser asserted that when the truth about the
 undisclosed cramming practices became public, the price of
 CenturyLink's common stock fell, thereby injuring Houser
 and other members of the class.
 
 
          ¶13
 In support of the foregoing contentions, Houser alleged that
 unnamed former employees at CenturyLink had said that
 cramming at CenturyLink was "happening all the time, all
 day, every day" and was a "very common and
 widespread" issue among customer complaints that were
 reported to senior
 
 10
 
 management. Houser further alleged that "[t]he rampant
 overbilling" at CenturyLink was not accidental and did
 not escape defendants' attention. To the contrary, it was
 recorded in CenturyLink's computer systems and regularly
 reported to senior management.
 
 
          ¶14
 As noted above, the amended complaint also included
 references to a number of other lawsuits filed against
 CenturyLink. For example, the amended complaint referred to
 the CenturyLink case and relied on allegations made
 in that case by confidential witnesses.
 
 
          ¶15
 The amended complaint further referred to a lawsuit filed by
 the Minnesota Attorney General against CenturyLink, captioned
 State v. CenturyTel Broadband Services LLC, No.
 02-CV-17-3488 (Minn. Dist. Ct., Cnty. of Anoka). The amended
 complaint described and attached as exhibits four named
 customers' affidavits describing alleged cramming
 practices that the Minnesota Attorney General had submitted
 in the CenturyTel case. Houser asserted in the
 amended complaint that he had obtained these affidavits from
 the public docket in that case.
 
 
          ¶16
 The amended complaint alleged that the above-described
 lawsuits were "based on extensive research as well as
 thousands of complaints from aggrieved customers," all
 of which painted a consistent picture and made clear that
 CenturyLink's cramming practices were not isolated
 occurrences but rather
 
 11
 
 comprised a pervasive and systemic problem that was known to
 CenturyLink's senior management.
 
 
          ¶17
 Finally, the amended complaint contained allegations from a
 lawsuit filed by a former employee named Heidi Heiser, who
 had discovered that multiple CenturyLink customers had been
 billed for additional services that they did not request or
 authorize. The amended complaint recited that Heiser had
 raised her concerns with CenturyLink's management and
 ultimately filed a whistleblower complaint against
 CenturyLink. Houser cited his counsel's review of public
 filings in Heiser's lawsuit as one of the bases for the
 allegations in his amended complaint.
 
 
          ¶18
 Defendants subsequently filed a motion to dismiss the amended
 complaint pursuant to C.R.C.P. 12(b)(5), arguing, as
 pertinent here, that Houser had based his cramming omissions
 theory on "untested statements attributed to anonymous
 CenturyLink employees cited in other lawsuits."
 According to defendants, Houser did not allege that he or his
 counsel had spoken to any of these anonymous employees,
 verified their statements, or taken any other actions that
 could constitute a "reasonable inquiry" under
 C.R.C.P. 11. Defendants further contended that Houser had
 "simply plagiarized" complaints filed in other
 actions against CenturyLink without alleging that he or his
 counsel had spoken with any of the sources who had provided
 the underlying facts in those cases. As a result,
 
 12
 
 defendants argued, Houser had not conducted the reasonable
 inquiry required by C.R.C.P. 11 and, therefore, he did not
 have a basis to make such allegations. Accordingly, his
 amended complaint failed to state a plausible claim for
 relief.
 
 
          ¶19
 The district court ultimately agreed with defendants and
 dismissed Houser's amended complaint. The court began by
 noting that Houser had not contended that he had spoken with
 the unnamed employees who had made allegations against the
 defendants in the CenturyLink case. Nor had he
 asserted that he had spoken with Heiser. And, the court
 found, the statements given by the former CenturyLink
 employees in CenturyLink were "given in
 interviews conducted by various attorneys, none of whom
 [were] Plaintiff's counsel." As a result, in the
 court's view, Houser's contentions amounted to no
 more than that he had conducted "painstaking research
 and review of the related lawsuits" and had had
 discussions with plaintiffs' counsel in those cases.
 This, however, was insufficient to satisfy the reasonable
 inquiry standard. Accordingly, the court reviewed the
 viability of Houser's amended complaint by considering
 only the allegations that remained after omitting the
 foregoing "copied" allegations, and the court
 concluded that such allegations could not establish the
 requisite plausibility above a speculative level.
 
 
          ¶20
 Houser then appealed again, arguing that the district court
 had created an unworkable "reasonable inquiry"
 standard and incorrectly imposed on him the
 
 13
 
 burden to state the sources and bases for his allegations at
 the pleading stage. Specifically, Houser alleged that the
 district court had erred by (1) failing to apply the proper
 standard in deciding a C.R.C.P. 12(b)(5) motion and
 impermissibly converting C.R.C.P. 11's requirement of a
 reasonable inquiry into a standard of pleading; (2) failing
 to consider his allegations as a whole and to draw all
 reasonable inferences in his favor; and (3) denying him leave
 to amend again because this was his first amended complaint
 and there was no undue delay or prejudice.
 
 
          ¶21
 In a unanimous, published opinion, a division of the court of
 appeals reversed and remanded for further proceedings.
 Houser v. CenturyLink, Inc., 2024 COA 96, ¶ 8,
 559 P.3d 677, 680 ("Houser II"). In so
 ruling, the division concluded that (1) if a plaintiff takes
 appropriate investigative steps, then the plaintiff may
 incorporate allegations from confidential witnesses cited in
 another complaint; and (2) in such circumstances, C.R.C.P.
 11(a) does not require plaintiff's counsel to speak
 directly with the confidential witnesses. Id.
 
 
          ¶22
 To reach this conclusion, the division began by noting that
 in evaluating the adequacy of an attorney's inquiry into
 the factual basis for a pleading, we have applied an
 "objective reasonableness standard." Id.
 at ¶ 29, 559 P.3d at 684 (quoting In re Trupp,
 92 P.3d 923, 930 (Colo. 2004) ("Trupp
 II"). Thus, an attorney
 
 14
 
 violates C.R.C.P. 11(a) "by failing to conduct an
 objectively reasonable inquiry prior to filing a signed
 pleading." Id. (quoting Trupp II, 92
 P.3d at 930).
 
 
          ¶23
 Relying, then, on federal cases interpreting Fed.R.Civ.P. 11,
 the division concluded that Houser's counsel had not
 violated C.R.C.P. 11 by copying allegations, including
 allegations made by confidential witnesses, from the
 CenturyLink complaint without speaking with those
 witnesses. Id. at ¶ 54, 559 P.3d at 687. The
 division reached this conclusion for six reasons: (1) counsel
 had undertaken an independent investigation, even though
 counsel did not speak with the witnesses; (2) Houser had
 attested in good faith that the allegations were based on
 personal knowledge as to him and his own acts and on
 information and belief as to all other matters, based on
 counsel's investigation; (3) Houser had attested in good
 faith that he believed that additional evidentiary support
 for his allegations would exist after a reasonable
 opportunity for discovery; (4) another court had already
 determined that the confidential witness statements that
 Houser had copied into his amended complaint were sufficient
 to support a properly pled complaint; (5) Houser's
 counsel's inquiry was objectively reasonable; and (6) the
 federal cases cited by defendants regarding potential
 unethical behavior by attorneys did not warrant raising the
 bar for plaintiffs to access the justice system. Id.
 at ¶¶ 54-59, 559 P.3d at 687-88. As to the last
 point, the division observed that if a plaintiff filed a
 complaint largely premised on fabricated witness statements
 
 15
 
 from another complaint, then Colorado law provides for
 appropriate sanctions. Id. at ¶ 60, 559 P.3d at
 688.
 
 
          ¶24
 Defendants then sought certiorari review in this court, and
 we granted their petition.
 
 
          II.
 Analysis
 
 
          ¶25
 We begin by setting forth the applicable standard of review.
 We then discuss the pleading and investigation requirements
 set forth in our civil rules, and we review the case law
 setting forth the parameters of an attorney's obligation
 to conduct a reasonable investigation before making
 allegations in a complaint. Finally, we apply these
 principles to the facts now before us.
 
 
          A.
 Standard of Review
 
 
          ¶26
 Defendants' contentions before us require us to interpret
 C.R.C.P. 11. We interpret the Colorado Rules of Civil
 Procedure de novo. Mason v. Farm Credit of S. Colo.,
 ACA, 2018 CO 46, ¶ 7, 419 P.3d 975, 979. In doing
 so, we interpret the rules according to their commonly
 understood and accepted meanings. Id. Moreover, we
 construe the rules liberally to effectuate their objective of
 securing "the just, speedy, and inexpensive
 determination of every action." Id. (quoting
 C.R.C.P. 1(a)).
 
 16
 
          ¶27
 Similarly, we review de novo a district court's dismissal
 of a complaint for failure to state a claim under C.R.C.P.
 12(b)(5). Jagged Peak Energy Inc. v. Okla. Police
 Pension &Ret. Sys., 2022 CO 54, ¶ 24,
 523 P.3d 438, 446.
 
 
          B.
 Pleading and Investigation Requirements
 
 
          ¶28
 The principal purpose of a complaint is to provide notice of
 the claims being asserted. Kluge v. Wilson, 448 P.2d
 786, 787 (Colo. 1968). C.R.C.P. 8(a)(2) sets out the basic
 requirements of a claim for relief: "A pleading which
 sets forth a claim for a relief whether an original claim,
 counterclaim, cross-claim, or a third-party claim, shall
 contain . . . a short and plain statement of the claim
 showing that the pleader is entitled to relief ...."
 C.R.C.P. 8(e)(1) adds, "When a pleader is without direct
 knowledge, allegations may be made upon information and
 belief."
 
 
          ¶29
 C.R.C.P. 11(a), in turn, provides, in pertinent part:
 
 
 Every pleading of a party represented by an attorney shall be
 signed by at least one attorney of record in his individual
 name.... The signature of an attorney constitutes a
 certificate by him that he has read the pleading; that to the
 best of his knowledge, information, and belief formed after
 reasonable inquiry, it is well grounded in fact and is
 warranted by existing law or a good faith argument for the
 extension, modification, or reversal of existing law, and
 that it is not interposed for any improper purpose, such as
 to harass or to cause unnecessary delay or needless increase
 in the cost of litigation.
 
 
          ¶30
 This rule focuses on the pre-filing and pre-pleading behavior
 of the attorney and personalizes the responsibility of the
 attorney who certified the pleading by signing it. People
 v. Trupp, 51 P.3d 985, 990, 992 (Colo. 2002)
 ("Trupp I"). The rule
 
 17
 
 also "safeguards the judicial process by compelling
 attorneys to submit pleadings which are truthful and advance
 meritorious legal arguments." Stepanek v. Delta
 Cnty., 940 P.2d 364, 370 (Colo. 1997).
 
 
          ¶31
 The scope of a C.R.C.P. 11(a) inquiry "concerns whether
 the attorney (1) has read the pleading in question; (2) has
 undertaken reasonable inquiry into the pleading's factual
 and legal assertions; and (3) possessed a proper purpose in
 filing the pleading." Trupp I, 51 P.3d at 991.
 The inquiry does not, however, turn on the outcome of a case.
 Id. Rather, "it turns on whether the attorney
 met the reasonable inquiry and proper purpose threshold in
 preparing and filing the pleading." Id.
 
 
          ¶32
 Bad faith is not a prerequisite of a C.R.C.P. 11 violation.
 Trupp II, 92 P.3d at 930. Accordingly, an attorney
 may violate C.R.C.P. 11(a) solely by failing to conduct an
 objectively reasonable inquiry before filing a signed
 pleading. Id.
 
 
          C.
 Objectively Reasonable Inquiry
 
 
          ¶33
 Defendants essentially argue that Houser's counsel did
 not conduct an objectively reasonable inquiry when drafting
 the amended complaint because counsel (1) copied allegations
 and information from complaints in other cases without
 personally verifying or corroborating such allegations and
 information and (2) did not speak with any of the
 confidential witnesses cited in the other cases before
 copying their allegations into the amended complaint here. As
 a result,
 
 18
 
 defendants contend, Houser's counsel failed to comply
 with C.R.C.P. 11, and, therefore, the division's decision
 should be reversed.
 
 
          ¶34
 Colorado case law discussing the parameters of an
 attorney's C.R.C.P. 11(a) obligation to conduct an
 objectively reasonable inquiry appears to be limited. In
 Trupp II, 92 P.3d at 930-32, we considered
 whether an assistant attorney regulation counsel had
 conducted a reasonable investigation before filing a
 complaint alleging that an attorney had violated the Colorado
 Rules of Professional Conduct by not paying child support. We
 observed that before filing her complaint, counsel, either
 directly or through an investigator, had reviewed the intake
 file, spoken several times with the respondent attorney and a
 number of others with relevant information, reviewed the
 current and prior child support orders and records of the
 respondent attorney's payments, independently calculated
 the arrearages, and researched case law. Id. at 931.
 In those circumstances, we concluded that no evidence
 established that regulation counsel had failed to investigate
 either the facts or the law or had misrepresented the facts
 or law in her complaint. Id. at 931-32. Accordingly,
 we determined that the presiding disciplinary judge had
 abused his discretion in concluding that regulation counsel
 had violated C.R.C.P. 11. Id. at 932.
 
 
          ¶35
 Federal courts construing Fed.R.Civ.P. 11 appear to have
 addressed the objectively reasonable inquiry requirement of
 that rule more frequently than we
 
 19
 
 have addressed the analogous requirement in C.R.C.P. 11, and
 because C.R.C.P. 11 closely parallels Fed.R.Civ.P. 11,
 compare Fed.R.Civ.P. 11(b)(3) (requiring reasonable
 inquiry), with C.R.C.P. 11(a) (same), we deem it
 appropriate to look to federal case law for guidance, see
 Trupp I, 51 P.3d at 990 ("We consider federal
 precedent when our rule is similar to the federal
 rule.").
 
 
          ¶36
 Federal courts addressing whether counsel who had not
 independently verified allegations in a complaint had
 satisfied Fed.R.Civ.P. 11's reasonable investigation
 requirement have reached varying conclusions, depending on
 the particular facts of each case.
 
 
          ¶37
 For example, in In re Teva Securities Litigation,
 671 F.Supp.3d 147, 164-66 (D. Conn. 2023), several
 plaintiffs who had opted out of a class action settlement
 brought direct actions concerning the same securities fraud
 allegations involving Teva Pharmaceutical Industries, Ltd.
 and others that underlay the class action. In their
 complaints in the direct actions, the plaintiffs had
 "recycle[d]" several allegations raised in the
 class action and in an action brought by state attorneys
 general, some of which contained allegations made by
 confidential witnesses. Id. at 191, 193. Although
 the direct action complaints were modeled on the class
 action, they also raised new claims and added new defendants.
 Id. at 166.
 
 
          ¶38
 The defendants moved to dismiss, contending that the direct
 actions' "wholesale lifting" of allegations
 from the other actions did not constitute the
 
 20
 
 reasonable investigation required by Fed.R.Civ.P. 11.
 Id. at 191. Ultimately, the district court rejected
 that contention and concluded that the direct action
 complaints complied with Fed.R.Civ.P. 11. Id. at
 192-93. In reaching this conclusion, the district court
 observed that (1) the state attorneys general's
 allegations "were the product of an intensive,
 multi-year investigation," and it was reasonable for the
 direct action plaintiffs to rely on a governmental
 investigation because "such information may have more
 'evidentiary support'"; (2) counsel for the
 direct action plaintiffs had investigated the complaints on
 which counsel had relied; (3) it was proper for counsel for
 the direct action plaintiffs to reassert allegations brought
 in complaints drafted by experienced counsel or governmental
 investigators and counsel; and (4) each of the direct action
 complaints identified the sources that counsel had
 investigated and attested in good faith that discovery would
 provide evidentiary support for the allegations pled on
 information and belief. Id. (quoting de la
 Fuente v. DCI Telecomms., Inc., 259 F.Supp.2d 250, 260
 (S.D.NY. 2003)). According to the court, "Rule 11
 requires nothing more." Id. at 193. And that
 rule specifically did not "require counsel to certify
 that counsel has spoken with the confidential witnesses and
 knows who they are." Id.
 
 
          ¶39
 In Garr v. U.S. Healthcare, Inc., 22 F.3d 1274,
 1277-79 (3d Cir. 1994), in contrast, the court affirmed the
 district court's imposition of sanctions on two
 
 21
 
 plaintiffs' attorneys who had copied allegations from a
 complaint filed in a separate securities action. The court
 noted that the attorneys had relied only on a newspaper
 article, another complaint, and another attorney's
 research without making any effort to examine the materials
 that the other attorney had assembled and without justifying
 their failure to have done so. Id. at 1280.
 According to the court, no evidence suggested that the other
 attorney would have declined to share the materials with
 them, and the other attorney's office was a short
 distance from the plaintiffs' attorneys' offices.
 Id. In addition, the materials on which the other
 attorney had relied were all publicly accessible.
 Id. And there were no time constraints requiring the
 attorneys to act on an expedited basis. Id.
 
 
          ¶40
 The court added, however:
 
 
 A signer's obligation personally to comply with the
 requirements of Rule 11 clearly does not preclude the signer
 from any reliance on information from other persons.... Thus,
 in CTC Imports and Exports, we stated that a
 determination of whether there has been "a reasonable
 inquiry may depend on . . . whether [the signer] depended on
 forwarding counsel or another member of the bar."
 
 
 Id. at 1278-79 (second omission and alteration in
 original) (quoting CTC Imports &Exports v. Nigerian
 Petroleum Corp., 951 F.2d 573, 578 (3d Cir. 1991)). The
 court further observed that a court "must consider all
 the material circumstances in evaluating the signer's
 conduct." Id. at 1279.
 
 
          ¶41
 Finally, in In re BankAtlantic Bancorp, Inc. Securities
 Litigation, 851 F.Supp.2d 1299, 1309 (S.D. Fla. 2011),
 the court addressed, among other things, the propriety
 
 22
 
 of class counsel's relying on statements made by
 confidential witnesses to investigators employed by
 counsel's law firms. There, the defendants argued that
 class counsel had violated Fed.R.Civ.P. 11(b)(3) by falsely
 attributing factual assertions to confidential witnesses and
 by failing to make a reasonable inquiry to determine whether
 such assertions were true and properly attributable to those
 witnesses. Id. at 1309-10. The defendants also
 pointed out that four of the confidential witnesses had
 disavowed making some of the assertions attributed to them
 and one witness denied providing information to class
 counsel. Id. at 1310.
 
 
          ¶42
 In response, class counsel asserted that investigators at
 their law firms had interviewed the confidential witnesses
 and that counsel had supervised the investigative efforts,
 provided the investigators with proposed points of inquiry,
 and reviewed the notes and memoranda prepared by the
 investigators. Id. at 1311.
 
 
          ¶43
 On these facts, the court concluded that the inquiry that
 class counsel had conducted was not unreasonable under the
 circumstances. Id. In reaching this conclusion, the
 court, citing Garr, 22 F.3d at 1280, noted that
 "an attorney has a non-delegable duty to
 analyze the facts and law that support a pleading or
 motion, not necessarily to personally gather those
 facts." BankAtlantic, 851 F.Supp.2d at 1311.
 Accordingly, the court found that the fact that some of the
 witnesses' later deposition testimony contradicted the
 assertions attributed to them in the consolidated complaints
 did not, without more, warrant a conclusion that class
 
 23
 
 counsel had violated Rule 11. Id. at 1311-12. In the
 court's view, any such discrepancies created only
 credibility questions. Id. at 1312. The court did
 conclude, however, that class counsel's inclusion of
 assertions attributed to one witness violated Rule 11 because
 that witness did not work for BankAtlantic's credit
 department for years prior to or during the class period,
 and, therefore, a reasonable inquiry by class counsel would
 have revealed that the factual contentions attributed to this
 witness lacked adequate evidentiary support. Id. at
 1313-14.
 
 
          ¶44
 With this case law in mind, we turn to the facts now before
 us.
 
 
          D.
 Application
 
 
          ¶45
 Defendants contend that it was improper for Houser to copy
 allegations from other complaints against CenturyLink without
 interviewing the witnesses on whose statements the
 allegations were based. We do not believe that our civil
 rules or the above-described case law support so unbending a
 rule.
 
 
          ¶46
 As noted above, C.R.C.P. 8(a) makes clear that the purpose of
 a complaint is notice. Subject to exceptions admittedly not
 at issue here, see C.R.C.P. 9(b) (indicating matters
 that must be alleged with particularity), a plaintiff need
 only set forth "a short and plain statement of the claim
 showing that the pleader is entitled to relief,"
 C.R.C.P. 8(a)(2). Moreover, our rules expressly provide that
 a party may plead on information and belief. C.R.C.P.
 8(e)(1).
 
 24
 
          ¶47
 In light of the foregoing, and recognizing that the extent of
 investigation necessary in a given litigation is highly fact
 dependent, we decline to adopt a bright-line rule precluding
 a party from copying allegations in related litigation unless
 counsel speaks to the witnesses whose statements supported
 such allegations. It simply may not be possible for counsel
 to do so. Instead, we conclude that counsel must conduct a
 sufficient investigation to support the allegations contained
 in a complaint, at least on information and belief.
 
 
          ¶48
 Here, we agree with the division that Houser's counsel
 conducted a sufficient inquiry. Houser's counsel stated
 in the amended complaint that their investigation included
 talking to plaintiffs' counsel in the other related cases
 involving CenturyLink. Houser's counsel further alleged
 that counsel had reviewed (1) publicly available filings in
 the related cases, including documents concerning the
 whistleblower's testimony and witnesses' testimony in
 other cases in which courts had determined that ample
 evidence supported the plaintiffs' claims; (2)
 investigations by state attorneys general; (3) SEC filings by
 CenturyLink; (4) CenturyLink's press releases, earning
 calls, and analyst reports; and (5) media reports about
 CenturyLink. Houser's counsel also attached to the
 amended complaint affidavits from four named customers
 describing their experiences with CenturyLink. In our view,
 these efforts, which largely paralleled those found
 sufficient by the court in Teva, 671 F.Supp.3d at
 192-93, satisfied
 
 25
 
 C.R.C.P. 11(a)'s reasonable inquiry requirement, even if
 counsel did not personally speak with the witnesses whose
 allegations counsel copied.
 
 
          ¶49
 Such a conclusion is fully consistent with the
 above-described purposes of both C.R.C.P. 8 and 11, which are
 to provide a short and plain statement showing that the
 pleader is entitled to relief, C.R.C.P. 8(a), and to set
 forth a plausible claim for relief after conducting a
 reasonable investigation of the facts and law, C.R.C.P.
 11(a); see also Warne v. Hall, 2016 CO 50, ¶
 24, 373 P.3d 588, 595 (adopting the plausibility standard for
 motions to dismiss for failure to state a claim). Such a
 conclusion also recognizes that, in many cases, essential
 facts are in the hands of civil defendants and may not be
 available to plaintiffs absent a fair opportunity for
 discovery after setting forth a plausible claim for relief,
 which is one reason that C.R.C.P. 8(e)(1) expressly
 authorizes counsel to plead on information and belief.
 
 
          ¶50
 To conclude otherwise, as defendants would have us do, would
 dramatically raise the standard for sufficient pleading in a
 case like this. It would essentially require plaintiffs to
 set forth substantial evidence in their complaint before they
 have had an opportunity to conduct reasonable discovery. And
 it would also require plaintiffs to recite in their complaint
 all that their counsel did to investigate the allegations
 made in the complaint. Our civil rules, however, do not
 establish such requirements, and we will not impose them by
 judicial fiat.
 
 26
 
          ¶51
 Simply stated, our pleading rules and C.R.C.P. 11 exist to
 ensure fair notice to defendants of the claims being asserted
 against them and that plaintiffs conduct reasonable
 investigations before filing suit, so that plaintiffs'
 claims are plausibly supported by the facts and the law. In
 our view, these rules adequately protect the interests of all
 parties in a litigation, and we perceive no reason to require
 either more or less from plaintiffs.
 
 
          ¶52
 In reaching our conclusion today, we are unpersuaded by
 defendants' argument that our opinion will allow
 plaintiffs in Colorado "to wholesale copy complaints
 from other lawsuits without personally investigating the
 facts alleged in them" and will leave Colorado courts in
 cases involving borrowed allegations with no ability to
 enforce C.R.C.P. 11's duty to investigate, because the
 attorney who investigated the claims will be absent and
 beyond the jurisdiction of Colorado's procedural and
 ethical rules. Contrary to defendants' assertions, our
 opinion requires the reasonable investigation mandated by our
 civil rules. In addition, we are confident that Colorado
 courts have all of the tools necessary to hold accountable
 attorneys who file pleadings in Colorado that violate
 Colorado procedural and ethical rules.
 
 
          ¶53
 We likewise are unpersuaded by defendants' suggestion
 that opinions like ours today have caused (and presumably
 will continue to cause) securities class actions to skyrocket
 in state courts. We are not convinced by defendants'
 
 27
 
 suggestion that any increase in the number of securities
 class actions pending in state courts is attributable to
 judicial decisions allowing meritless actions to proceed. To
 the contrary, we believe that trial courts in this state and
 others have served—and we have every confidence will
 continue to serve—as appropriate gatekeepers to ensure
 that lawsuits that do not satisfy the requirements to survive
 motions to dismiss will be resolved properly and
 expeditiously.
 
 
          III.
 Conclusion
 
 
          ¶54
 For these reasons, we conclude that counsel must conduct a
 sufficient investigation to support the allegations contained
 in a complaint, at least on information and belief. The
 extent of the investigation required, however, is highly fact
 dependent, and, therefore, a plaintiff's copying of
 allegations contained in complaints in related actions does
 not alone violate counsel's duty under C.R.C.P. 11(a) but
 rather must be considered in the context of each case.
 
 
          ¶55
 Applying these principles here, we further conclude that
 Houser's counsel conducted a sufficient investigation to
 allow counsel to include in the amended complaint in this
 case, consistent with counsel's obligations under
 C.R.C.P. 11, allegations that were contained in complaints in
 related actions against some of the same defendants named
 here.
 
 
          ¶56
 Accordingly, we affirm the judgment of the division below.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, we granted certiorari to
 decide:
 
 
 Whether C.R.C.P. 11(a)'s non-delegable duty to
 conduct an objectively reasonable inquiry is satisfied when
 an attorney "borrows plausibility" from a complaint
 in another lawsuit.
 
 
 Because we do not believe that the phrase
 "borrows plausibility" is clear or precise, we do
 not use that phrase in this opinion.
 
 
 ---------